NATOLI, Appellee,

v.

The **OHIO STATE DENTAL BOARD**, Appellant.

[Cite as *Natoli v. Ohio State Dental Bd.*, 177 Ohio App.3d 645, 2008-Ohio-4068.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 08AP–81.

Decided Aug. 12, 2008.

646

Paul L. Wallace, for appellee.

Nancy H. Rogers, Attorney General, and Katherine J. Brockbrader, Assistant Attorney General, for appellant.

———————————

KLATT, Judge.

{¶ 1} Appellant, the Ohio State Dental Board ("board"), appeals from a judgment of the Franklin County Court of Common Pleas vacating the board's order that suspended the license of appellee, Dr. Samuel Natoli, D.D.S. For the following reasons, we reverse and remand.

{¶ 2} On July 20, 2005, the board issued a notice of opportunity for hearing ("notice") to Dr. Natoli. In the notice, the board proposed to take disciplinary action against Dr. Natoli for five reasons: (1) he departed from or failed to conform to accepted standards for the dental profession when (a) he did not adequately sedate Patient # 1, and (b) he did not refer Patient # 1 to a practitioner better suited to her needs, (2) he departed from or failed to conform with accepted standards for the dental profession when he did not properly diagnose Patient # 1's need for treatment, (3) his failure to test his heat sterilizer for proper function violated Ohio Adm.Code 4715–20–02(A)(4), (4) his failure to heat sterilize his high-speed hand pieces, contra-angles, and nose cones between patients violated Ohio Adm.Code 4715–20–02(A)(2), and (5) his failure to wear a chin-length face shield or eyewear with protective side shields when spattering of blood or other body fluids was likely, violated Ohio Adm.Code 4715–20–01(C)(2). With regard to counts one and two (the standard-of-care violations), the board sought to discipline Dr. Natoli pursuant to R.C. 4715.30(A)(7) and (9). With regard to counts three through five (the infection-control violations), the board sought to discipline Dr. Natoli pursuant to R.C. 4715.30(A)(9) and (10).

{¶ 3} In accordance with R.C. 119.07, Dr. Natoli requested an adjudicatory hearing. Prior to the hearing, the hearing examiner issued an order setting forth prehearing procedures and a prehearing schedule. The order stated:

Any written report by an expert must be exchanged by November 7, 2005. Any written report by an expert required to be exchanged under this order shall set forth the opinions to which the expert will testify and the bases for such opinions. The failure of a party to produce a written report from an expert fully conforming to the terms of this order shall result in the exclusion of that expert's testimony at hearing.

{¶ 4} At the November 21, 2005 hearing, Dr. Natoli stipulated and admitted to the conduct underlying counts three through five. However, Dr. Natoli vigorously disputed counts one and two. As part of his defense to those counts, Dr.

Natoli attempted to introduce the expert testimony of Dr. R. Ned Kramer, D.D.S., to rebut the state's expert witness, Dr. Matthew Kirlough, D.D.S. The state objected, arguing that the hearing examiner's prehearing order required the exclusion of any expert witness if the party calling the witness had not given the opposing party a written expert report. Because Dr. Natoli's attorney had not produced a written expert report from Dr. Kramer, the board sought to exclude his expert testimony.

{¶ 5} The hearing examiner overruled the state's objection. Construing the portion of the prehearing order addressing the exchange of written expert reports, the hearing examiner stated, "Each of those three sentences anticipates that there is a written report * * *. If there isn't a written report, I'm not sure how any of those three sentences applies." The hearing examiner further explained:

In those instances where an expert intends to qualify as an expert but does not prepare a report, my order doesn't command that they actually prepare a report. But if they go to the trouble of making a report and if they intend to rely on it during this evidentiary hearing, there has to be an exchange of that report in conformity with the order.

Because Dr. Kramer did not write a report, the prehearing order did not obligate Dr. Natoli to disclose anything to the state.

{¶ 6} The hearing examiner then asked whether the state's attorney was aware of any board rule that addressed the exchange of expert-witness reports. The state's attorney directed the hearing examiner to Ohio Adm.Code 4715–15–18, which reads:

Any witness including the respondent, identified as, or wishing to testify as an expert witness, shall prepare and file an expert report that sets forth the opinions to which the expert will testify and the bases for such opinions. The failure of a party to produce a written report from an expert in accordance with this rule or under the terms of the hearing examiner's order shall result in the exclusion of that expert's testimony at hearing.

{¶ 7} Given the dictates of Ohio Adm.Code 4715–15–18, the hearing examiner reversed himself and sustained the state's objection. Dr. Natoli's attorney then proffered that Dr. Kramer would have testified that Dr. Natoli had met the standard of care in the diagnosis and treatment of Patient # 1 and that Dr. Natoli had not fallen below the standard of care when he failed to refer Patient # 1 to another dentist. Dr. Kramer's opinions contradicted the opinions of the state's expert witness.

{¶ 8} On February 9, 2006, the hearing examiner issued his report and recommendation. The hearing examiner found that the state had proven each of

the five counts set forth in the notice, and he recommended that the board suspend Dr. Natoli's license for 90 days. After reviewing the matter, the board concluded that the allegations contained in the notice were true. However, the board rejected the hearing examiner's recommended penalty and, instead, suspended Dr. Natoli's license for only 60 days.

{¶ 9} Dr. Natoli appealed the board's order to the trial court pursuant to R.C. 119.12. Dr. Natoli attacked the board's order on three bases: (1) the notice was deficient, (2) the exclusion of Dr. Kramer's expert testimony constituted a denial of due process under the United States and Ohio Constitutions, and (3) the order was not supported by reliable, probative, and substantial evidence.

{¶ 10} In its December 3, 2007 decision, the trial court held that because Dr. Natoli had not challenged the adequacy of the notice before the board, he had waived that argument. Second, the trial court held that the exclusion of Dr. Kramer's expert testimony violated Dr. Natoli's right to due process. The trial court concluded that "[w]ithout the benefit of [Dr. Kramer's] testimony, [it] [could not] find that the decision of the Board [was] supported by reliable, probative, and substantial evidence and nor [sic] in accordance with law." Finally, the trial court held that the infection control violations were not serious enough to warrant the suspension of Dr. Natoli's license.

{¶ 11} On January 7, 2008, the trial court issued a judgment entry vacating the board's order. The board now appeals from that order and assigns the following errors:

■ The lower court erred in finding that the application of the Board's rule requiring disclosure of expert witness reports was contrary to law.

■ The lower court erred in reversing and vacating the Board's Order where three of the five charges had been stipulated to by Dr. Natoli.

■ The lower court erred, and failed to afford due deference to the Board's expertise, in holding that the Board's decision was not supported by reliable, probative, and substantial evidence.

■ The lower court erred, in direct contravention of the Supreme Court of Ohio's holding in *Henry's Café v. Board of Liquor Control* (1959), 170 Ohio St. 233 [10 O.O.2d 177], 163 N.E.2d 678, by determining that the three undisputed charges were not sufficient to support the Board's order.

■ {¶ 12} Pursuant to R.C. 119.12, when a trial court reviews an order of an administrative agency, it must consider the entire record to determine whether the agency's order is supported by reliable, probative, and substantial evidence and is in accordance with law. To be "reliable," evidence must be dependable and true within a reasonable probability. *Our Place, Inc. v. Ohio Liquor Control Comm.* (1992), 63 Ohio St.3d 570, 589 N.E.2d 1303. To be

"probative," evidence must be relevant, or, in other words, tend to prove the issue in question. Id. To be "substantial," evidence must have importance and value. Id.

{¶ 13} In conducting the review of the administrative record, the trial court must "appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof." *Andrews v. Bd. of Liquor Control* (1955), 164 Ohio St. 275, 280, 58 O.O. 51, 131 N.E.2d 390. An appellate court's review of the evidence is more limited than a trial court's. Instead of appraising the weight of the evidence, an appellate court determines whether the trial court abused its discretion in its examination of the record for reliable, probative, and substantial evidence. *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621, 614 N.E.2d 748. However, on questions of law, an appellate court's review is plenary. *Franklin Cty. Sheriff v. Frazier*, 174 Ohio App.3d 202, 2007-Ohio-7001, 881 N.E.2d 345, at ¶ 17.

{¶ 14} For ease of analysis, we will address the board's second and fourth assignments of error together. By those assignments of error, the board argues that the trial court erred in vacating the board's order because the three infection-control violations were supported by reliable, probative, and substantial evidence and sanctioned in accordance with law. We agree.

{¶ 15} The trial court may vacate an agency's order if it is not supported by reliable, probative, and substantial evidence or it is not in accordance with law. R.C. 119.12. In the case at bar, the trial court implicitly concluded that reliable, probative, and substantial evidence proved the infection-control violations. Stating that Dr. Natoli had admitted the conduct underlying the infection-control violations, the trial court did not question the evidence proving the violations, but instead examined the penalty imposed. Without a violation, there can be no penalty. Thus, by recognizing Dr. Natoli's stipulation and then addressing the appropriateness of the penalty, the trial court tacitly acknowledged that the infection-control violations had a sound evidentiary basis.

{¶ 16} Additionally, the penalty that the board imposed upon Dr. Natoli for violating infection-control rules was in accord with law. The board found that Dr. Natoli's failure to follow board rules regarding infection control subjected him to disciplinary action under R.C. 4715.30(A)(9) and (10). According to R.C. 4715.30(C)(3), the board may suspend the license of any practitioner of a dental occupation if "one or more of the grounds for discipline listed in divisions (A) and (B) of this section exist." Therefore, R.C. 4715.30(C) authorized the suspension of Dr. Natoli's license. Because reliable, probative, and substantial evidence proved the infection-control violations and the suspension of Dr. Natoli's license was in accord with law, the trial court lacked a basis on which to vacate the

board's order, at least with regard to the three infection-control violations. Accordingly, we sustain the board's second and fourth assignments of error.

{¶ 17} We next consider the board's first assignment of error, by which the board argues that the trial court erred in finding that the exclusion of the testimony of Dr. Natoli's expert witness was contrary to law. We disagree.

{¶ 18} Both the Fourteenth Amendment of the United States Constitution and Section 16, Article I, of the Ohio Constitution require that administrative proceedings comport with due process. *Mathews v. Eldridge* (1976), 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (considering whether a federal agency accorded an individual due process before depriving him of a private interest); *Doyle v. Ohio Bur. of Motor Vehicles* (1990), 51 Ohio St.3d 46, 554 N.E.2d 97 (considering whether a state agency complied with due process requirements).[1] Pursuant to due process, governmental agencies must provide constitutionally adequate procedures before depriving individuals of their protected liberty or property interests. *Mathews,* 424 U.S. at 332, 96 S.Ct. 893, 47 L.Ed.2d 18; *Cleveland Bd. of Edn. v. Loudermill* (1985), 470 U.S. 532, 541, 105 S.Ct. 1487, 84 L.Ed.2d 494. A "fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.' " *Mathews,* at 333, 96 S.Ct. 893, 47 L.Ed.2d 18, quoting *Armstrong v. Manzo* (1965), 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62. See also *Loudermill* at 546, 105 S.Ct. 1487, 84 L.Ed.2d 494 ("The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement"). At its core, due process insists upon fundamental fairness, and the requirement to conduct a hearing implies that a fair hearing must occur. *Lassiter v. Dept. of Social Serv.* (1981), 452 U.S. 18, 24, 101 S.Ct. 2153, 68 L.Ed.2d 640; *Clayman v. State Med. Bd.* (1999), 133 Ohio App.3d 122, 127, 726 N.E.2d 1098, quoting *State ex rel. Ormet Corp. v. Indus. Comm.* (1990), 54 Ohio St.3d 102, 104, 561 N.E.2d 920. Above all, " '[d]ue process is flexible and calls for such procedural protections as the particular situation demands.' " *Mathews* at 334, 96 S.Ct. 893, 47 L.Ed.2d 18, quoting *Morrissey v. Brewer* (1972), 408 U.S. 471, 481, 92 S.Ct. 2593, 33 L.Ed.2d 484.

{¶ 19} In the case at bar, Dr. Natoli had a protected property interest in his professional license. *Haj–Hamed v. State Med. Bd.,* Franklin App. No. 06AP–351, 2007-Ohio-2521, 2007 WL 1501779, at ¶ 53. Thus, we must consider whether the board violated Dr. Natoli's right to due process when it suspended his license.

---

1. The "due course of law" aspect of Section 16, Article I, Ohio Constitution is the equivalent of the Due Process Clause of the United States Constitution. *Groch v. Gen. Motors Corp.,* 117 Ohio St.3d 192, 2008-Ohio-546, 883 N.E.2d 377, at ¶ 53.

{¶ 20} Dr. Natoli did not argue before the trial court that the procedures set forth in either Ohio Adm.Code 4715–15–18 or the hearing examiner's prehearing order were constitutionally infirm. Rather, Dr. Natoli pointed out the inconsistency between the rule and order, and he contended that the belated decision to follow the rule (and not the order) resulted in fundamental unfairness because the rule excluded expert testimony that the order would have allowed. We agree with the trial court that the rule and order are, in fact, contradictory. Ohio Adm.Code 4715–15–18 mandates that each expert witness prepare and file an expert report, and it provides that failure to produce an expert's report necessitates the exclusion of the expert's testimony. On the other hand, the hearing examiner's prehearing order does not state that an expert must write a report, and it requires exclusion of expert testimony only when a party fails to timely exchange "any" report that an expert may write.

{¶ 21} The hearing examiner did not clarify which procedure would govern the hearing until after Dr. Natoli's attorney called Dr. Kramer to the stand. At that point, the prejudice inherent in the existence of the two inconsistent prehearing procedures became apparent. Although Dr. Natoli's attorney complied with the prehearing procedure set forth in the order, the hearing examiner excluded Dr. Kramer's testimony based upon the dictates of the rule. Thus, the hearing examiner barred Dr. Natoli from introducing favorable expert testimony directly relevant to the operative issue of the hearing—whether Dr. Natoli deviated from the standard of care in his diagnosis and treatment of Patient # 1.

{¶ 22} Given these circumstances, we conclude that the board did not provide Dr. Natoli with due process before suspending his license. It was fundamentally unfair for the hearing examiner to institute a prehearing procedure contrary to the applicable administrative rule and then sanction Dr. Natoli under the rule when he had complied with the order. In excluding Dr. Kramer's testimony, the hearing examiner divested Dr. Natoli of the opportunity to be heard in a meaningful manner. Accordingly, we overrule the board's first assignment of error.

{¶ 23} Our conclusion that the board violated Dr. Natoli's right to due process entitles him to a remand to the board for a new hearing on the two standard-of-care violations. However, if the state failed to prove the standard-of-care violations by reliable, probative, and substantial evidence, then no remand would be necessary. Instead, we would have to affirm the trial court's judgment vacating the board's order with regard to those violations. Accordingly, we now turn to the board's third assignment of error, by which it argues that the trial court erred in finding that the record did not contain reliable, probative, and substantial evidence to support the order.

{¶ 24} As we stated above, the trial court implicitly found that the three infection-control violations were supported by reliable, probative, and substantial evidence. Consequently, we construe the third assignment of error as challenging only the trial court's ruling upon the quality and quantity of the evidence establishing the two standard-of-care violations.

{¶ 25} The trial court held that without the benefit of Dr. Kramer's testimony, the board's order was not supported by reliable, probative, and substantial evidence. While the exclusion of Dr. Kramer's testimony constituted an error of law, it is irrelevant to whether the record contains reliable, probative, and substantial evidence to support the standard-of-care violations. In considering whether an agency's order is supported by reliable, probative, and substantial evidence, the trial court must review the entire record and determine whether it contains the requisite quantum of evidence. R.C. 119.12; *Univ. of Cincinnati v. Conrad* (1980), 63 Ohio St.2d 108, 111, 17 O.O.3d 65, 407 N.E.2d 1265. Here, the trial court concluded that the board's order was not supported by reliable, probative, and substantial evidence due to the absence of certain evidence from the record. The trial court neglected to analyze the evidence actually contained in the record, a direct violation of the R.C. 119.12 mandate to "consider the entire record and such additional evidence as the court has admitted." Because the trial court did not analyze the record evidence to determine whether it was reliable, probative, and substantial, we cannot review whether the trial court abused its discretion in that analysis. Accordingly, we sustain the board's third assignment of error, but only to the extent that the trial court erred in failing to analyze the evidence presented before the board.

{¶ 26} Given our resolution of the assignments of error, we must remand this matter to the trial court for it to review whether, with regard to the standard-of-care violations, the board's order is supported by reliable, probative, and substantial evidence. If the trial court determines that reliable, probative, and substantial evidence exists, then it must remand this matter to the board for a new hearing on the standard-of-care violations. Depending upon the outcome of that hearing, the board will impose a penalty for all the violations (if the board again finds that Dr. Natoli violated the standard of care) or just the infection-control violations (if the board finds that Dr. Natoli did not violate the standard of care). If the trial court determines that reliable, probative, and substantial evidence does *not* exist, then it may vacate the board's order in relevant part and remand the matter to the board for it to sanction Dr. Natoli for the infection-control violations only.

{¶ 27} For the foregoing reasons, we sustain the board's second and fourth assignments of error, and we overrule the board's first assignment of error. Additionally, we sustain the board's third assignment of error, but only to the

extent stated above. We reverse the judgment of the Franklin County Court of Common Pleas, and we remand this matter to that court for further proceedings in accordance with law and this opinion.

Judgment reversed
and cause remanded.

BRYANT and FRENCH, JJ., concur.