[Cite as *Evans v. Dir. Ohio Dept. Job & Family Servs.*, 2015-Ohio-3842.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Loretta Evans, | : | |
| Appellant-Appellee, | : | No. 14AP-743 |
| | | (C.P.C. No. 14CVA-04-3675) |
| v. | : | |
| | | (REGULAR CALENDAR) |
| Director, Ohio Department of Job and Family Services, | : | |
| | : | |
| Appellee-Appellant. | : | |
| | : | |

D E C I S I O N

Rendered on September 22, 2015

*Isaac Wiles Burkholder & Teetor, LLC, Dale D. Cook*, and *J. Miles Gibson*, for appellee.

*Michael DeWine*, Attorney General, and *Patria V. Hoskins*, for appellant.

APPEAL from the Franklin County Court of Common Pleas.

BROWN, P.J.

{¶ 1} Appellee-appellant, the director of the Ohio Department of Job and Family Services ("director"), appeals a judgment of the Franklin County Court of Common Pleas that reversed a decision of the Unemployment Compensation Review Commission ("UCRC") finding that appellant-appellee, Loretta Evans, was an employer liable for contributions to the unemployment compensation fund. For the following reasons, we affirm in part and reverse in part.

{¶ 2}  Evans owns multiple trucks that she leases to MTT Logistics LLC, which was previously known as Multi-Modal Transit, LLC ("Multi-Modal").  Multi-Modal is a freight broker and, as such, arranges for the transportation of others' cargo.

{¶ 3} A contract entitled "Contract Hauling Agreement" governs Evans' relationship with Multi-Modal.  Under that contract, Evans, as an independent contractor for Multi-Modal, agrees "to furnish and to operate [the leased trucks] together with the driver and all other necessary labor and to transport, load and unload on behalf of [Multi-Modal] such commodities as [Multi-Modal] may from time to time make available to [Evans]."  (Sept. 23, 2010 Tr., exhibit No. 9, Section 1.)  In addition to providing labor, Evans must repair and maintain her trucks, as well as pay all operating expenses.  Multi-Modal pays Evans 70 percent of the gross revenue that Multi-Modal receives for each job completed.

{¶ 4}  The Contract Hauling Agreement vests Evans with the responsibility to hire the drivers, drivers' helpers, and other workers necessary for the performance of her contractual obligations.  According to the Contract Hauling Agreement, "[Evans] or [her] subcontractors shall determine the means and methods of the performance of all transportation services undertaken by [Evans]," including the days and time of operation and selection of routes traveled.  (Sept. 23, 2010 Tr., exhibit No. 9, Section 6.)

{¶ 5}  Although Evans is denominated an "owner-operator," she does not operate her trucks.  Kevin Evans, a principal member of Multi-Modal and Evans' son, advertises for, screens, and hires drivers for the trucks Multi-Modal leases, including Evans' trucks.  Drivers hired for Evans' trucks sign an "Independent Contract Agreement" with Evans.  Under that agreement, Evans agrees to pay each driver 35 percent of the net revenue she is paid by Multi-Modal for the jobs the driver completes.  Additionally, the driver acknowledges that he is an independent contractor, not Evans' employee, and he "has the right at any time to refuse any trip which is made available to him."  (Sept. 23, 2010 Tr., exhibit No. 5, Section 4.)  Evans provides each driver with a 1099 tax form.

{¶ 6}  In practice, Evans has no interaction with the drivers she hires.  Multi-Modal selects the drivers and dispatches them.  The drivers determine what routes they will take to complete each job.

{¶ 7}   On September 2, 2008, the director notified Evans that she would have to contribute to the unemployment compensation fund for the truck drivers that she employs.  The director also assigned Evans unemployment contribution rates for 2004 to 2008.  Evans applied to the director for reconsideration.  After receiving an unfavorable decision on reconsideration, Evans appealed to the UCRC.  Based on the evidence adduced during two hearings, the UCRC determined that Evans was an employer liable for contributions to the unemployment compensation fund.[1]  The UCRC found that Evans was a liable employer because she had the right to control the drivers she contracted with.  She did not personally exercise this right, but allowed her agent—Multi-Modal—to do so.

{¶ 8}   Evans appealed the UCRC's decision to the trial court.  In a judgment dated August 28, 2014, the trial court reversed the UCRC's decision, holding that it was not supported by reliable, probative, and substantial evidence.  The trial court found that the evidence established that Evans did not have the right to direct or control the drivers.  Moreover, the trial court found that the drivers were independent contractors and that Multi-Modal was not Evans' agent.

{¶ 9}   The director now appeals the August 28, 2014 judgment to this court and assigns the following errors:

> [I.] The Franklin County Court of Common Pleas abused its discretion in reversing the decision of the Unemployment Compensation Review Commission, as the Commission's decision that Loretta Evans was a liable employer for unemployment compensation purposes, was supported by reliable, probative, and substantial evidence and is in accordance with the law.
>
> [II.] The Franklin County Court of Common Pleas abused its discretion when it ruled that the drivers in question were not employees of Multi-Modal for unemployment compensation purposes.

{¶ 10} By her first assignment of error, the director argues that the trial court erred in reversing the UCRC's decision.  We disagree.

---

[1] The director dismissed Evans' application for reconsideration as untimely.  The UCRC held a hearing during which the parties presented evidence regarding both the procedural issue (timeliness) and the substantive issue (whether Evans was a liable employer).  The UCRC affirmed the director's decision on the procedural ground only.  The trial court reversed the UCRC's determination and remanded for further consideration.  The UCRC held a second hearing and issued the decision on appeal in the instant case.

{¶ 11} On appeal from a UCRC decision imposing liability for paying unemployment compensation contributions and/or setting the amount of the contribution rate, a common pleas court may affirm "if it finds, upon consideration of the entire record, that the determination or order is supported by reliable, probative, and substantial evidence and is in accordance with law." R.C. 4141.26(D)(2). If the court does not reach such a finding, the court may reverse, vacate, or modify the decision, or make such other ruling that is supported by reliable, probative, and substantial evidence and is in accordance with law. R.C. 4141.26(D)(2).

{¶ 12} In determining whether evidence is reliable, probative, and substantial, the trial court must " 'appraise all the evidence as to the credibility of the witnesses, the probative character of the evidence, and the weight thereof.' " *Natoli v. Ohio State Dental Bd.*, 177 Ohio App.3d 645, 2008-Ohio-4068, ¶ 13 (10th Dist.), quoting *Andrews v. Bd. of Liquor Control*, 164 Ohio St. 275, 280 (1955). To be "reliable," evidence must be dependable and true within a reasonable probability. *Our Place, Inc. v. Ohio Liquor Control Comm.*, 63 Ohio St.3d 570, 571 (1992). To be "probative," evidence must be relevant, or, in other words, tend to prove the issue in question. *Id.* To be "substantial," evidence must have importance and value. *Id.*

{¶ 13} We employ a narrower standard of review than the trial court. As to factual issues, we determine only if the trial court has abused its discretion. *BRT Transport, LLC v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 14AP-800, 2015-Ohio-2048, ¶ 15; *Miracle Home Health Care, LLC v. Ohio Dept. of Job & Family Servs.*, 10th Dist. No. 12AP-318, 2012-Ohio-5669, ¶ 18. An abuse of discretion requires more than an error in judgment. To find an abuse of discretion, we must conclude that the trial court's decision was without reasonable basis and clearly wrong. *BRT Transport* at ¶ 15; *Miracle Home Health Care* at ¶ 18. On questions of law, we apply the de novo standard of review. *BRT Transport* at ¶ 15.

{¶ 14} Ohio employers must contribute to Ohio's unemployment compensation fund. R.C. 4141.23. The definition of "employer" includes individuals who "ha[ve] in employment at least one individual." R.C. 4141.01(A)(1)(a). "Employment" is:

> [S]ervice performed by an individual for remuneration under any contract of hire, written or oral, express or implied * * *, unless it is shown to the satisfaction of the director that such

> individual has been and will continue to be free from direction or control over the performance of such service, both under a contract of service and in fact.

R.C. 4141.01(B)(1).

{¶ 15} Consistent with the statutory definition of "employment," Ohio Adm.Code 4141-3-05(A) provides:

> [A] worker is in employment when an "employer-employee" relationship exists between the worker and the person for whom the individual performs services and the director determines that:
>
> (1) The person for whom services are performed has the right to direct or control the performance of such services; and
>
> (2) Remuneration is received by the worker for services performed.

{¶ 16} Ohio Adm.Code 4141-3-05(B) sets forth 20 factors "[a]s an aid to determining whether there is sufficient direction or control present" to establish employment. Those factors, which "are designed only as guides" and "must be considered in totality," include:

> (1) The worker is required to comply with the instructions of the person for whom services are being performed, regarding when, where, and how the worker is to perform the services;
>
> (2) The person for whom services are being performed requires particular training for the worker performing services;
>
> (3) The services provided are part of the regular business of the person for whom services are being performed;
>
> (4) The person for whom services are being performed requires that services be provided by a particular worker;
>
> (5) The person for whom services are being performed hires, supervises or pays the wages of the worker performing services;
>
> (6) A continuing relationship exists between the person for whom services are being performed and the worker

performing services that contemplates continuing or recurring work, even if not full time;

(7) The person for whom services are being performed requires set hours during which services are to be performed;

(8) The person for whom services are being performed requires the worker to devote himself or herself full time to the business of the person for whom services are being performed;

(9) The person for whom services are being performed requires that work be performed on its premises;

(10) The person for whom services are being performed requires that the worker follow the order of work set by the person for whom services are being performed;

(11) The person for whom services are being performed requires the worker to make oral or written progress reports;

(12) The person for whom services are being performed pays the worker on a regular basis such as hourly, weekly or monthly;

(13) The person for whom services are being performed pays expenses for the worker performing services;

(14) The person for whom services are being performed furnishes tools, instrumentalities, and other materials for use by the worker in performing services;

(15) There is a lack of investment by the worker in the facilities used to perform services;

(16) There is a lack of profit or loss to the worker performing services as a result of the performance of such services;

(17) The worker performing services is not performing services for a number of persons at the same time;

(18) The worker performing services does not make such services available to the general public;

(19) The person for whom services are being performed has a right to discharge the worker performing services;

(20) The worker performing services has the right to end the relationship with the person for whom services are being performed without incurring liability pursuant to an employment contract or agreement.

{¶ 17} Here, the trial court found that the following facts established that Evans did not have the right to direct or control the drivers:

[Evans] merely leased the trucks to "Multi-Modal." She did not advertise, interview, or hire the drivers. In her contract with the drivers, the drivers acknowledge that they are independent contractors. The drivers are free to leave or quit whenever they want to and are free to drive for other companies. [Evans] did not train the drivers and had no control over their routes, hours, or how they performed their jobs. She did not supervise any of the drivers and the drivers were not required to work set or recurring hours. She did not keep the logs or require any work reports. She did not pay the expenses for the drivers. The drivers could sustain a loss. If the owner of the freight failed to pay "Multi-Modal," then neither [Evans] nor the drivers were paid. The drivers made their services available to the general public or other employers. The work was also not performed on the premises of [Evans]. [Evans] did pay the drivers if she was paid by "Multi-Modal," but the pay was not on a regular basis. They were merely paid a percentage of the amount [Evans] received from "Multi-Modal." The remuneration was for that load only. It was not a regular amount pay check or hourly. She did lease the trucks to "Multi-Modal[,]" which provided the trucks to the drivers.

(Aug. 28, 2014 Decision & Entry, 7-8.)

{¶ 18} For the most part, the director does not challenge the trial court's findings. The director outright disagrees with only two findings. First, the director maintains that the drivers cannot sustain losses. At the September 23, 2010 UCRC hearing, Ohio Department of Job and Family Services' external auditor who determined that Evans was a liable employer initially testified that the drivers cannot sustain a loss. However, on cross-examination, the auditor conceded that, if a freight owner does not pay for the services supplied by one of Evans' drivers, then the driver will lose remuneration for the time and labor expended on the job. As Kevin Evans explained, if Multi-Modal does not get paid, then it does not pay its owner-operators, and the owner-operators (like Evans)

do not pay their drivers. The evidence, therefore, demonstrates that the drivers can sustain losses.

{¶ 19} Second, the director maintains that Evans pays the expenses for the drivers. Apparently, when the trial court stated that Evans does not pay the drivers' expenses, the trial court was referring to expenses for personal needs, such as food and lodging. While Evans may not pay those expenses, she does pay for each truck's operating expenses, such as fuel and tolls. The evidence, therefore, is equivocal on this point.

{¶ 20} The director also argues that Evans has the right to control how the drivers perform their jobs, even if she delegates that right to Multi-Modal. The director finds this control reflected in the Contract Hauling Agreement between Evans and Multi-Modal. True, the Contract Hauling Agreement assigns to Evans the obligation to "determine and direct [her] operations in all respects including but not limited to, determination of days and time of operation [and] selection of routes of travel." (Sept. 23, 2010 Tr., exhibit No. 9, Section 5(E).) Evans, however, structures her operations so that her drivers determine if and when they will work and the routes they will travel to transport freight. The Contract Hauling Agreement governs Evans' relationship with Multi-Modal, not Evans' relationship with her drivers. It is the Independent Contract Agreements between Evans and each driver that determine Evans' right to control her drivers. Under those contracts, the drivers are designated independent contractors, and no contractual term gives Evans the right to control how the drivers perform their jobs.

{¶ 21} Primarily, the director contests the trial court's ruling by pointing to evidence that she contends suggests an employer-employee relationship. This evidence includes: Evans' ability to bar a particular person from driving one of her trucks, the drivers' inability to permit another person to perform jobs they accept, the prohibition against the drivers using Evans' trucks to perform work for other carriers, and Evans' ownership of the trucks and responsibility for the trucks' maintenance, repairs, and operating expenses. The director also points out that the services provided by the drivers are integral to Evans' truck-leasing business, and that Evans negotiates the drivers' rate of pay and pays the drivers.

{¶ 22} Some, if not all, of this evidence militates in favor of an employer-employee relationship under the factors set forth in Ohio Adm.Code 4141-3-05(B). However, after

considering the totality of those factors, we conclude that the trial court did not abuse its discretion in determining that Evans lacked the direction and control necessary for an employer-employee relationship to exist.  Here, as is often true in these types of cases, both sides can point to evidence supporting their view.  Employing the Ohio Adm.Code 4141-3-05(B) factors, the trial court examined all that evidence and determined that the reliable, probative, and substantial evidence did not support the UCRC's decision.  We can find no abuse of discretion in the trial court's determination.  Accordingly, we overrule the director's first assignment of error.

{¶ 23} By the director's second assignment of error, she argues that the trial court erred in finding that the drivers were not employees of Multi-Modal.  The director contends that the trial court should not have addressed an issue not before it.  We agree.

{¶ 24} "A court is limited in its determination to the matters properly before it.  Ordinarily[,] it has no authority to pass upon questions not involved and in respect to which its jurisdiction has not been invoked."  *Boyle v. Pub. Adjustment & Constr. Co.*, 87 Ohio App. 264, 271 (8th Dist.1950).  In the case at bar, neither the UCRC's decision nor the parties briefing raised the issue of whether the drivers were employees of Multi-Modal.  Furthermore, the trial court was not required to decide that issue in order to rule on the issues before it—whether the drivers were Evans' employees, which, in turn, hinged on whether Evans had the right to control the drivers.  Accordingly, we find that the trial court erred in determining that the drivers were not Multi-Modal's employees, and we sustain the second assignment of error.

{¶ 25} For the foregoing reasons, we overrule the director's first assignment of error, and sustain the director's second assignment of error.  The judgment of the Franklin County Court of Common Pleas is affirmed in part and reversed in part, and this cause is remanded to that court to modify the August 28, 2014 decision and entry by deleting the paragraph on page 8 beginning with the word "Initially" and the second conclusion on the bottom of page 9.

*Judgment affirmed in part and reversed in part;*
*cause remanded with instructions.*

TYACK and SADLER, JJ., concur.

_____