[Cite as *Garber v. State Med. Bd. of Ohio*, 2020-Ohio-2909.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Michael Garber, M.D., | : | |
| Appellant-Appellant, | : | |
| | : | No. 19AP-620 |
| v. | : | (C.P.C. No. 17CV-7479) |
| State Medical Board of Ohio, | : | (REGULAR CALENDAR) |
| Appellee-Appellee. | : | |

D E C I S I O N

Rendered on May 12, 2020

**On brief:** *Dinsmore & Shohl LLP, Elizabeth Y. Collis,* and *Vladimir P. Belo,* for appellant.

**On brief:** *Dave Yost,* Attorney General, *Kyle C. Wilcox,* and *Katherine Bockbrader,* for appellee.

APPEAL from the Franklin County Court of Common Pleas

NELSON, J.

{¶ 1} Ohio statute provides that "[i]f" the state medical board "has reason to believe" that a doctor's ability to practice medicine is impaired "because of habitual or excessive use or abuse of drugs," it may require the doctor "to submit to a mental or physical examination"; the doctor's failure then to submit to such an examination as ordered "constitutes an admission of the allegations against [him or her] unless the failure is due to circumstances beyond the individual's control," and that attributed admission permits the board to limit, revoke, or suspend the doctor's license. R.C. 4731.22(B) and (B)(26). The board now contends that its authority to order a doctor to submit even to a three-day custodial examination on pain of losing his or her license is absolute and not subject to challenge or review at any stage in or after the process. But that is not what the statutes and our precedents suggest.

{¶ 2} The background of this administrative appeal is well summarized in the common pleas court's September 17, 2019 Decision and Judgment Entry. In brief, Dr. Michael Garber, who was licensed in Ohio but now practices exclusively in New York pursuant to a medical license issued by that state, spoke in October 2015 with investigators from the Ohio Medical Board and the Ohio Pharmacy Board about a matter that came to naught. During the course of that conversation, he admitted to the investigators that he had begun smoking marijuana while in medical school and that he "intermittently" had used the drug since, even after having acquired a prescription for another drug to treat a condition that he found also ameliorated by marijuana. Decision and Judgment Entry at 3. Some seven months later, in May 2016, medical board staff served him with written interrogatories, to which he responded by acknowledging that he had used marijuana most recently in "small amount while on vacation in Colorado" that month. "It was very minimal use and only while in Colorado," he averred. "I have never used marijuana chronically, and do not ever wish to." May 27, 2016 Interrogatory Answers 46-49 (also avowing that within the seven-year timeframe defined for him, he never had used "recreational or illegal drugs other than marijuana").

{¶ 3} Then, by letter dated August 18, 2016, the medical board's Secretary (apparently in conjunction solely with the board's Supervising Member, *see* April 27, 2017 Hearing Transcript at 55, 61, 115; R.C. 4731.22(F)(2)), advised him that the board "has determined that it has reason to believe that you are in violation of Section 4731.22(B)(26), Ohio Revised Code, to wit: '[i]mpairment of ability to practice * * * because of habitual or excessive use or abuse of drugs, alcohol, or other substances * * *.' " The letter stated as the reason for that determination his admission to having "intermittently" used marijuana "in order to help with symptoms of [his condition]. However, you admitted that you continued to use marijuana despite being prescribed medication for [that condition]. You further admitted that you had starting [sic] using marijuana during your third year of medical school. At that time, you told the Board investigator that you were done using marijuana, but you later admitted in your responses to the Board's First Set of Interrogatories that you had used marijuana in May 2016 while in Colorado." August 18, 2016 Letter to Dr. Garber from Kim G. Rothermel, M.D., Secretary, State Medical Board of Ohio.

{¶ 4} The letter continued: "By the authority vested in the State Medical Board of Ohio by Section 4731.22(B)(26), Ohio Revised Code, you are ordered to submit to * * * * a 72-hour in-patient evaluation" at Shepherd Hill Hospital in Newark, Ohio. *Id.* The board Secretary further advised Dr. Garber that he would be responsible for paying the $4,872 cost of the examination, and concluded: "Please be advised that failure to submit to this examination as directed constitutes an admission of the allegations against you unless the failure is due to circumstances beyond your control, and that a default and final order may thereupon be entered without the taking of testimony or presentation of witnesses." *Id.*

{¶ 5} After some back and forth and rescheduling of dates, Dr. Garber sued in common pleas court to block the board's order, but that action was dismissed for lack of subject-matter jurisdiction. *See* Decision and Judgment Entry at 5 (referring to that dismissal). Dr. Garber then did not report for his evaluation as ordered to begin on October 17, 2016. The board Secretary responded with a Notice of Opportunity for Hearing dated November 9, 2016 that advised the doctor that given his failure to appear for the examination or to notify the board of circumstances beyond his control that had prevented him "from submitting to said examination," a "legal presumption has been established that you have admitted the factual and legal allegations demonstrating an impairment of your ability to practice * * *." The board "intends * * * to determine whether your failure to submit to the aforementioned examination was due to circumstances beyond your control * * * [so as to] merit rescheduling the examination * * *, or conversely, whether your failure to submit to the aforementioned examination was due to circumstances within your control, which would * * * result in the board further determining whether to [take specified actions against his license]," the letter continued. November 9, 2016 Letter to Dr. Garber from Kim G. Rothermel, M.D., Secretary, State Medical Board of Ohio, Ex. 1A at 1. He was to be provided a limited hearing, Dr. Garber was told, "concerning whether your failure to submit to the examination as directed was due to circumstances beyond your control." *Id.* at 3.

{¶ 6} Dr. Garber did request a hearing. During the run-up to the hearing when issuing various preliminary evidentiary rulings, the hearing examiner echoed the board Secretary in emphasizing what the limited scope of the hearing would be. Under the heading "Does the Purpose of the Hearing Include Whether the Board had Sufficient

'Reason to Believe' that Dr. Garber was Impaired?", the hearing examiner stated: "there is nothing in Ohio Revised Code Chapter 119 [governing administrative appeals] or R.C. 4731.22 that confers a right to a hearing to challenge the Board's 'reason to believe' an individual is impaired. Furthermore, to any extent that such a right exists, the appropriate forum to address such issues would be a court, not the Board. Accordingly, this issue will not be addressed at the hearing." January 26, 2017 Hearing Examiner Entry at 3, 4.

{¶ 7} At the urging of board counsel, the hearing examiner adhered to that ruling when he conducted the hearing on April 27, 2017. *See* Transcript at 10 (board counsel says "sole purpose" of hearing was to decide whether doctor had been unavoidably prevented from submitting to exam), 52-53 (no right to challenge "reason to believe"), 82 (hearing examiner reiterates that "we have [only] one issue in this case"). The record reflects that he did permit a proffer related to whether the board had "reason to believe" that Dr. Garber's ability to practice medicine was impaired "because of habitual or excessive use of drugs," but that he absented himself from the hearing room during that presentation and that the proffer material was not made available to the board when it acted on the hearing officer's recommendations. *See, e.g.,* Transcript at 82-83, 90; July 12, 2017 Board Minutes at 23858, 23860 ("Dr. Soin denied the motion because the proffered evidence dealt with whether Dr. Garber was impaired, whereas the issue at hearing was Dr. Garber's failure to appear for the Board-ordered evaluation. Ms. Anderson [board legal counsel] stated that if the Board wishes to see the proffered material, it would have to remand the matter back to the Hearing Unit. * * * * The Board can instruct the Hearing Unit [that] it would like to see the proffered evidence and testimony, and the Hearing Examiner would hear arguments on both sides of that issue.").

{¶ 8} The hearing examiner submitted his Report and Recommendation to the board on June 14, 2017. After reciting procedural background and noting that Dr. Garber's Ohio medical license had "expired due to non-renewal on January 1, 2017" (*compare* R.C. 4731.22(M)(3), providing that failure to renew a license does not limit the board's disciplinary jurisdiction), the Report noted that "Dr. Garber acknowledged that he had told investigators that he used marijuana intermittently," but "denied that he * * * made any kind of agreement with the investigators to discontinue marijuana" use. *Id.* at 2, 4. The doctor "acknowledged," as the hearing examiner put it, his court foray seeking to enjoin the

evaluation. *Id.* at 4. "He further testified that there has never been evidence that he has appeared at work impaired." *Id.* And while the hearing examiner himself acknowledged that the "standard" that controls the board's authority to order an R.C. 4731.22(B)(26) evaluation is whether it has " 'reason to believe' the individual suffers from impairment" of ability to practice, he reiterated his view that such a determination is not subject to challenge. *Id.* at 8. Then, without reference to that "standard," he cited the statute as establishing that licensees consent to submit to such orders, and that failure to do so constitutes admission of the allegations unless the failure stems from circumstances beyond the doctor's control. *Id.* at 9-10. "In Dr. Garber's case," he concluded, "his failure to attend the Board-ordered examination was not due to circumstances beyond his control. * * * * By operation of law, the evidence establishes that Dr. Garber is impaired." *Id.* at 10.

{¶ 9} The hearing examiner recommended that Dr. Garber's license be indefinitely suspended, with reinstatement not to be considered until he has "completed a minimum of 28 days of inpatient/residential treatment for chemical dependency/abuse at a treatment provider approved by the Board" and also complied with aftercare. *Id.* at 10-11. Moreover, the doctor was to be on at least five years' probation after reinstatement, with conditions including that he "shall abstain completely from the use of alcohol," undergo "random urine screenings for drugs and alcohol at least four times per month," and "maintain participation in an alcohol and drug rehabilitation program, such as A.A., N.A., C.A., or Caduceus no less than three times per week, or as otherwise ordered by the Board." *Id.* at 11, 12, 13, 16.

{¶ 10} The board took up the matter on July 12, 2017 and heard from counsel for Dr. Garber and from its own Attorney General's office lawyer. The minutes of that meeting reflect that board members discussed (but did not decide) whether the board had had "reason to believe" that Dr. Garber was impaired in his practice before he was ordered to undergo inpatient evaluation. Board member Gonidakis, for example, "stated that he sees no evidence to justify the Secretary and Supervising Member's decision to approve sending Dr. Garber to an evaluation in the first place." July 12, 2017 Minutes at 23857. He "expressed concern" with the view that the doctor "had no right under Ohio law to rebut the * * * reason to believe that he may be chemically dependent," and "further express[ed] concern about government overreach" especially given that "no patient, colleague, or family member [had] complained that Dr. Garber ever seemed impaired." *Id.* He "stated that the

* * * voting members of the Medical Board [are to] act as a check and balance on the Secretary and Supervising Member as well as [on] the staff. Mr. Gonidakis stated that as part of this role, it is the duty of the * * * voting members to weigh the evidence and determine [whether] the correct course of action had been taken." *Id.* In some contrast, board member Steinbergh, while finding the argument of Dr. Garber's lawyer "compelling," thought that "the Secretary and Supervising Member had [had] reason to believe that there were credible concerns about Dr. Garber's possible impairment at the time that they approved the evaluation," but that "the matter seemed to drag on for some time after that time and Dr. Garber continued to practice * * * for about two more years without the Board's further intervention beyond sending interrogatories, which Dr. Garber answered honestly." *Id.* Dr. Steinbergh then inquired about the board's ability to see the proffered material. *Id.* at 23858.

{¶ 11} Board member Schottenstein "stated that a reason to believe that there may be impairment" is a different "standard" from "evidence of impairment" and that "only a reason to believe there is impairment is necessary. * * * [E]vidence is what is gathered at the evaluation, and if the evaluation shows a lack of evidence then the licensee is found to not be impaired." *Id.* He opined "that Dr. Garber's due process rights have not been violated because the law clearly indicated that * * * a hearing ['to ascertain the validity of the Board's reason to believe'] is not a legal right." *Id.* "[T]he law does not provide Dr. Garber with a legal recourse in this matter," he continued, and challenges to "reason to believe" determinations could thwart timely board action, drain state resources, and delay "a just outcome." *Id.* at 23858-59.

{¶ 12} Reprising the issue, Mr. Gonidakis "stated that his focus is on * * * whether there was reason to believe that Dr. Garber needed to be sent to a three-day, $5,000 evaluation," while Dr. Schottenstein noted Dr. Garber's marijuana admissions and "stated that the voting Board members do not always have all the facts [that] led to a given decision, but stated that he has to trust that the Board's staff made an informed decision when they collected the data." *Id.* at 23859. Board member Giacalone expressed concern that the investigators' initial questions to Dr. Garber about his own drug use may have been inappropriate or "excessive," and "stated that he does not question the decision of the Secretary and Supervising Member since they would have information that the other Board

members do not." *Id.* He renewed the call to see the proffered materials and said that, in the alternative, he would favor modifying the sanction to stay a suspension of Dr. Garber's license. *Id.* at 23859.

{¶ 13} After further discussion in which board counsel said that a request to see the proffered matter would have to be returned to the hearing officer for review, and that even a stayed order would be "reported to the National Practitioner Databank," *id.* at 23860, 23874, the board adopted what had been member Giacalone's proposal, *id.* at 23875. On a vote of 8-1, with Dr. Schottenstein a "nay" and with three abstentions, the board adopted the hearing examiner's findings of fact and conclusions of law (as based on Dr. Garber's unexcused failure to attend the examination) and ordered Dr. Garber's (lapsed) license suspended indefinitely, with that suspension stayed. *Id.*

{¶ 14} Dr. Garber appealed the board's order to the common pleas court pursuant to R.C. 119.12. *See* R.C. 4731.22(C) (section 4731.22(B) disciplinary actions "shall be taken pursuant to an adjudication under Chapter 119"). Citing *Mansour v. State Med. Bd.*, 10th Dist. No. 17AP-615, 2018-Ohio-2605, ¶ 16, the common pleas court recognized its responsibility as being to determine whether the order was in accordance with law and supported by reliable, probative, and substantial evidence. Decision and Judgment Entry at 8, 9.

{¶ 15} The common pleas court rebuffed Dr. Garber's argument that the board had lacked "reason to believe" that his ability to practice was impaired due to habitual or excessive drug use, finding that the August 18, 2016 letter ordering the examination was conclusive on that score. *Id.* at 10-11. The court then rejected Dr. Garber's argument that his due process rights had been violated by the board's not having permitted him to challenge the "reason to believe" conclusion. Due process does require that someone whose "professional license is subject to discipline" must be given "notice and an opportunity to be heard" before discipline is imposed, the court said, *id.* at 11 (citing *Wilson v. State Chiropractic Bd.*, 10th Dist. No. 18AP-739, 2019-Ohio-3243, ¶ 27 and *Jain v. State Med. Bd.*, 10th Dist. No. 09AP-1180, 2010-Ohio-2855, ¶ 7), but the board had not deprived Dr. Garber of his license when it ordered him to report for the examination; it therefore followed, the court opined, that "the Board did not violate [the doctor's] right to due process by not [ever] providing * * * a hearing" on whether it had had " 'reason to believe' that [he]

was an impaired physician."  *Id.* at 11.  The common pleas court also rejected Dr. Garber's third ground for appeal there (not at issue here), which involved whether the board sufficiently had articulated its reasons for modifying the sanctions recommended by the board's hearing examiner.  *Id.* at 11-15.  And because the board properly had established impairment and had imposed a sanction available to it for that circumstance, the "harsh result" of its stayed licensure suspension was in accordance with law, the court concluded.  *Id.* at 15-16, citing *Henry's Café v. Bd. of Liquor Control*, 170 Ohio St. 233 (1959).  The common pleas court upheld the board's order.  *Id.* at 16 (adding that if the court were not constrained by the review standards of R.C. 119.12, "the outcome in Appellant's case might very well have been different").

{¶ 16}  Appealing from that judgement, Dr. Garber submits in his first assignment of error that the common pleas court erred in finding that the board's order was supported by reliable, probative, and substantial evidence, and submits in his second assignment of error that the common pleas court erred in finding that the board's order was in accordance with law.  Appellant's Brief at v.

{¶ 17}  Our standard of review is more limited than that which applies to administrative appeals in the court of common pleas, and we do not determine the weight of the evidence.  *See Smith v. State Med. Bd.*, 10th Dist. No. 12AP-234, 2012-Ohio-4423, ¶ 13, citing *Rossford Exempted Village School Dist. Bd. of Edn. v. State Bd. of Edn.*, 63 Ohio St.3d 705, 707 (1992).  We review for abuse of discretion a finding by the court of common pleas that a board order was supported by reliable, probative, and substantial evidence.  *Id.* (citation omitted).  "However, on the question whether the board's order was in accordance with the law, this court's review is plenary."  *Id.,* citing *Univ. Hosp., Univ. of Cincinnati College of Medicine v. State Emp. Relations Bd.*, 63 Ohio St.3d 339, 343 (1992).

{¶ 18}  The board acknowledges to us that its determination that a doctor is impaired in his or her practice is a "legal threshold for the Board to meet before ordering [that doctor] to submit to an impairment evaluation."  Appellee's Brief at 1.  And the board is correct, under our case law, that "[t]here is no statutory or due process right to a hearing *before* the impairment examination is ordered."  *Id.* at 3 (emphasis in original).  But the board is incorrect, as the trial court was, to conflate board latitude with regard to the *timing* of a

hearing (including on whether it has satisfied that "threshold" requirement) with latitude on the necessity to afford such a hearing *at all*.

{¶ 19} The "threshold" may not be steep, but it also may not be ignored; any board conclusion that it has been met is not somehow immunized from all challenge during the administrative review process. That is, the statutory provision making clear that a licensee is "deemed to have given consent to submit to a mental or physical examination when ordered to do so by the board in writing" does not relieve the board of the constraint (ordained as part of the statutory backdrop against which the doctor's "consent" is given) that it may order the examination only "[i]f it has reason to believe" that the doctor is impaired. *See* R.C. 4731.22(B)(26); *compare Smith*, 2012-Ohio-4423, at ¶ 17 ("Ohio law provides that physicians hold a medical license in Ohio pursuant to the appropriate medical oversight of the Board, and are deemed to have given consent to the statutory constraints attendant thereto as long as due process is afforded").

{¶ 20} Thus, in considering appeal from common pleas court review of Chapter 119 board adjudications, we have looked to see whether "[t]he record supports the common pleas court's decision that the board was justified in ordering [a doctor] to submit to a medical evaluation." *Travis v. State Med. Bd.*, 10th Dist. No. 91AP-33, 1991 Ohio App. Lexis 2419, *6; *see also, e.g., Smith*, 2012-Ohio-4423, at ¶ 18 ("We find that the court of common pleas did not abuse its discretion in finding that the Board correctly concluded that appellant must submit to a mental evaluation"); *compare Weigel v. Ohio Bd. of Nursing*, 10th Dist. No. 14AP-283, 2014-Ohio-4069, ¶ 7, 18 (pro se appellant did not brief her administrative appeal to the common pleas court, and while this court noted the limited nature of the nursing board hearing and determination that did not examine whether there was good faith reason to order examination, we did not analyze that fact beyond making the observation).

{¶ 21} *Alexander v. Press*, 10th Dist. No. 77AP-233, 1977 Ohio App. Lexis 7394, a precedent of some four decades' standing, involved a doctor's allegation "that he had been unlawfully ordered to appear for a mental examination" under a not dissimilar version of R.C. 4731.22; the case concerned his efforts to enjoin the order. Our discussion there of timing issues is highly instructive here. After holding (in the context of what is now R.C. 4731.22(B)(19) regarding a showing of "possible violation" arising from mental or physical

illness) that "[t]he showing of a possible violation requires a good faith determination," albeit not in any particular form of evidence, *id.* at *9, we noted that an order to submit to an examination is more in the nature of discovery than "an adjudication in itself, as an additional hearing and action is required" to determine the doctor's "rights, duties, privileges, benefits, or legal relationships," *id.* at *10-11. "The demands of due process do not require a hearing at the initial stage or at any particular point, or *at more than one point* in an administrative proceeding *so long as the requisite hearing is held before the final order becomes effective.*" *Id.* at *11-12 (emphasis added), citing *Opp Cotton Mills v. Admr. of Wage and Hour Div. of Dept. of Labor*, 312 U.S. 126 (1941).

{¶ 22} Thus, in *Alexander*'s context of whether an examination order was justified, we observed that "[b]efore the board could finally revoke the license * * *, it would be necessary to give notice and an opportunity for a hearing, pursuant to R.C. 119, as that action would involve an adjudication. That opportunity for hearing is sufficient to satisfy the procedural due process provisions of the Ohio and United States Constitutions." *Id.* at *12. Significantly, and underscoring that the doctor must have the opportunity to be heard on the appropriateness of an examination order before discipline becomes effective, we further noted as to timing: "However, there is also nothing in the law that prevents the board from giving advance notice and an opportunity for a hearing before a physician is ordered to submit to a mental or physical examination. In light of the infrequency of the use of this provision, and the severity of the charge, such procedure may be justified. That decision [as to sequencing] is within the discretion of the board rather than being mandated by statute or constitution." *Id. Compare also, e.g., Doriott v. State Med. Bd.*, 10th Dist. No. 05AP-1079, 2006-Ohio-2171, ¶ 14 ("appellant's due process rights were violated by the procedure used by the board to suspend her license [after she failed to submit to exam]. Appellant never had an opportunity for a hearing on her summary license suspension, in contravention of R.C. 119.07.").

{¶ 23} Dr. Garber does not appear to seek more than the law and our precedents provide. He urges simply that the hearing on his license should not have been restricted to whether circumstances had unavoidably prevented his presenting himself for the three-day inpatient evaluation as ordered. He knows that his "chosen course is admittedly risky procedurally. A licensee could opt not to attend the mental examination and rest on a

challenge to the Board's 'reason to believe.'   If the Hearing Examiner and the Board find that there was, in fact, a good faith 'reason to believe' the licensee was impaired, then the order compelling a mental examination would be deemed valid and the presumption of impairment specified in R.C. 4731.22(B)(26) would [apply] as a result of the licensee's failure to attend the examination."  Reply Brief at 4-5.

{¶ 24} Although the board's lawyers argue that "the Board had ample reason to believe Dr. Garber was impaired to justify sending him to an evaluation," Appellee's Brief at 11, we are not in a position to make that judgment in the first instance:  While the issue would seem to be precisely of the sort that is within the special competence of the medical board (and although R.C. 4731.22(B)(26) explicitly assigns the "reason to believe" determination to the board), the hearing examiner excluded it from his consideration, and the board did not determine it either.  For us to make that assessment on our own and outside of the process of reviewing the common pleas court's review of the board's determination would stand the administrative appeal process on its head. *See, e.g., Residents of Baldwin Rd. v. State (in re Proposed Transfer of Territory)*, 10th Dist. No. 02AP-257, 2002-Ohio-5522, ¶ 17 ("There would be no point in having various tiers of review in administrative cases if the only duty of each reviewing body were to approve without question the decision which came before.  Nor would there be any point in allowing each reviewing body to make a decision completely independent of any preceding findings and conclusions.").

{¶ 25} The record is clear that the board itself never afforded Dr. Garber the opportunity to be heard on whether the order to submit to a three-day examination was supported by a good faith "reason to believe" that his ability to practice was impaired by the habitual or excessive use of drugs. The hearing examiner resolutely excluded that determination from his deliberations, to the point of leaving the hearing room when the subject arose.  *See, e.g.,* Transcript at 82-90; *see also* Appellee's Brief at 10-11 (acknowledging, in various formulations, that the only "purpose of [the] hearing was to consider Dr. Garber's failure to appear for his evaluation, not the Board's 'reason to believe' "), 6, 27.  The board, in turn, did not supplement the hearing examiner's limited findings of fact and conclusions of law (which had culminated in the examiner's "[r]ationale" that Dr. Garber was deemed impaired "[b]y operation of law," *see* Report and

Recommendation at 10).  July 12, 2017 Minutes at 23875 (approving examiner's findings of fact and conclusions of law, without amendment on those matters).   Like its hearing examiner, the board did not conclude, one way or another, whether the "reason to believe" order had been justified.  *See, e.g., id.* at 23857 (member Gonidakis "sees no evidence to justify the Secretary and Supervising Member's decision to approve sending Dr. Garber to an evaluation"), 23859 (member Schottenstein "stated that the voting Board members do not always have all the facts th[at] led to a given decision, but stated that he has to trust that the Board's staff made an informed decision when they collected the data").  *Compare also id.* at 23857 (member Gonidakis  "stated that the * * * voting members of the Medical Board [are meant to] act as a check and balance on the Secretary and Supervising Member as well as [on] the staff") *with Baldwin Rd.*, 2002-Ohio-5522, at ¶ 17 ("the system envisions a series of checks and balances in which each reviewing body considers what has gone before with an eye for the reasonability of the prior decision based upon all the facts presented and in light of the statutory requirements and factors.").

{¶ 26}  "Under R.C. 119.12, a reviewing court is obligated to determine whether the agency's decision is 'in accordance with law.'  An agency adjudication is like a trial, and while the reviewing court must defer to the lower tribunal's findings of fact, it must construe the law on its own."  *Ohio Hist. Soc. v. State Emp. Relations Bd.*, 66 Ohio St.3d 466, 471 (1993).   The administrative process as ordained by law contemplates that a practitioner subject to potential discipline will be provided an "opportunity to be heard in a meaningful manner."  *Natoli v. St. Dental Bd.*, 177 Ohio App.3d 645, 2008-Ohio-4068, ¶ 22.  Given the structural mandates of Chapter 119 and the substantive mandates of R.C. 4731.22, whether the board had "reason to believe" that Dr. Garber was impaired in his ability to practice because of the habitual or excessive use of drugs was a question for the board to address in the context of its adjudication before that "threshold" determination would become subject to court review.

{¶ 27} We sustain Dr. Garber's second assignment of error because the board did not act in accordance with law when it imposed the (stayed) license suspension without affording him the opportunity to be heard on (and without determining) the "threshold" question of whether, when the three-day examination was ordered, the board had "reason

to believe" that his ability to practice medicine was impaired "because of habitual or excessive use of drugs."   Dr. Garber's first assignment of error therefore is moot.

{¶ 28} Our decision should not be construed as compelling any particular evidentiary ruling in the administrative process, nor does it assess what result the board may reach when it arrives at its "reason to believe" determination.   And we note again that board findings of fact (as opposed to its constructions of law) are entitled to deference.   In light of some of the discussion in the board minutes, we also note that nothing in our reading of the necessary process obviates or limits the provisions of R.C. 4731.22(G) relating to summary suspensions pending final adjudication within 75 days of a requested hearing.

{¶ 29}  We reverse the judgment of the Franklin County Court of Common Pleas and remand the case to that court with instructions to vacate the medical board's July 12, 2017 order of (stayed) license suspension and to remand the matter to that board for further proceedings in accordance with this decision.

*Judgment reversed; cause remanded with instructions.*

BROWN, J., concurs.
LUPER SCHUSTER, J., concurs in judgment only.

——————————