[Cite as *TS Tech USA Corp. v. Pataskala*, 2024-Ohio-5534.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| TS TECH USA CORPORATION | : | JUDGES: |
| | : | |
| | : | Hon. Patricia A. Delaney, P.J. |
| Plaintiff-Appellee/Cross-Appellant | : | Hon. William B. Hoffman, J. |
| | : | Hon. Craig R. Baldwin, J. |
| -vs- | : | |
| | : | Case No. 24 CA 0038 |
| | : | |
| CITY OF PATASKALA BOARD OF ZONING APPEALS, ET AL. | : | |
| | : | |
| | : | |
| Defendants-Appellants/Cross-Appellees | : | O P I N I O N |

CHARACTER OF PROCEEDING:      Appeal from the Licking County Court of Common Pleas

JUDGMENT:      Affirmed

DATE OF JUDGMENT ENTRY:      November 21, 2024

APPEARANCES:

For Plaintiff-Appellee/Cross-Appellant:

C. Darcy Jalandoni
41 S. High Street, 29th Floor
Columbus, Ohio 43215

Terry W. Posey
One South Main Street, Suite 1600
Dayton, Ohio 45042

For Defendants-Appellants/Cross-Appellees:

Brian M. Zets
Dale D. Cook
Two Minerva Place, Suite 700
Columbus, Ohio 43215

*Delaney, P.J.*

{¶1} Defendants-Appellants City of Pataskala, City of Pataskala Board of Zoning Appeals, and City of Pataskala Planning Director Scott Fulton (collectively the "City") have appealed from the Licking County Court of Common Pleas Decision and Order Reversing Decision of the City of Pataskala Board of Zoning Appeals Denying TS Tech USA Corporation's Driveway Permit Application dated March 21, 2024. Plaintiff-Appelee is TS Tech USA Corporation ("TS Tech").

## FACTS AND PROCEDURAL HISTORY

{¶2} TS Tech owns a parcel of land at 6630 Taylor Road SW, Pataskala, Licking County, Ohio (the "Taylor Road property"). Taylor Road runs north and south the length of the east side of the property. It intersects E. Broad Street at the southeast corner of the property. The only direct access to the property is a driveway on Taylor Road.

{¶3} The property is zoned for light manufacturing. TS Tech manufacturers seats and interior components for automobiles. Other businesses also operate in the vicinity, including a concrete manufacturer, a mulch manufacturer, and a semi-truck storage facility.

{¶4} TS Tech's parent company, TS Tech Americas, Inc., owns the adjacent parcel to the west at 8400 E. Broad Street, Jefferson Township, Franklin County, Ohio (the "E. Broad Street property"). Despite their proximity, the properties have driveways on different roads and sit in different counties. The driveway for this property is on E. Broad Street. To access the property, a driver turns left or right from E. Broad Street onto TS Tech Drive. TS Tech drive runs north and south on the E. Broad Street property and intersects a private drive. The private drive runs east and west and links the two properties.

{¶5} When TS Tech purchased the Taylor Road property in 2015, it was undeveloped. In 2016, it filed an application to expand the existing gravel driveway that led to Taylor Road. The City approved the request, but with the following conditions:

> 1. The driveway shall be for emergency access only. Access by garbage trucks, semi-trucks, employee automobiles or other nonemergency vehicles is prohibited.
>
> 2. The gate shall remain locked at all times and shall only be accessed by emergency personnel and applicable TS Tech employees.
>
> ***
>
> 5. All necessary approvals shall be obtained from the City of Pataskala if the driveway is to be altered or upgraded to full access.

{¶6} It is unclear why the City imposed the conditions. At the time, however, TS Tech did not appeal them.

{¶7} TS Tech subsequently began having discussions with the City about removing these conditions. The City's Service Director, Alan Haines, instructed TS Tech to conduct a traffic study to study the impact of removing them. TS Tech engaged MS Consultants to conduct the study. On November 26, 2019, Mr. Haines emailed TS Tech and shared his concerns about the potential effects changing the conditions could have. He said the topic would be on the agenda for the next Street Committee meeting. The Street Committee rejected the request.

{¶8} In 2019, TS Tech applied for permission to construct a cross-dock facility on the Taylor Road property. The cross-dock facility would allow TS Tech to transfer parts from supplier trucks onto trucks traveling to other manufacturing facilities. The City approved the construction permit with the condition that the Taylor Road driveway would remain an

emergency access subject to the previous conditions. The permit stated that TS Tech reserved "the right to seek and apply for separate approval, modification, or variance thereof."

{¶9}  With the driveway limited to emergency personnel, it remained gated and locked except for an occasional truck using it. Employees exiting the property had to drive to the E. Broad Street property and exit to the south on E. Broad Street.

{¶10} On August 6, 2020, TS Tech filed a Driveway Permit Application with the city seeking removal of the conditions and full use of the Taylor Road driveway. It included an updated traffic study dated March 20, 2020. The traffic study maintained that, because of security concerns, TS Tech would use the driveway for outbound traffic. The majority of that traffic would be between the afternoon shift change period, approximately 3:00 p.m. to 4:30 p.m.  It assumed two trucks would cross Taylor Road during the peak hour.

{¶11} In response, the City issued a letter stating that the application was being returned because TS Tech should have appealed the conditions when they were approved rather than requesting a new permit four years later. TS Tech appealed the response to the Pataskala Board of Zoning Appeals (BZA). The BZA remanded the matter back to the City so it could provide guidance on how TS Tech could properly seek to lift the conditions.

{¶12} The parties met on December 2, 2020, to discuss the matter. The City had in the meantime determined that the appropriate means to remove the conditions was by the driveway permit application. It instructed TS Tech to file the application again. The City reminded TS Tech about the concerns set forth in the November 26, 2019, email from Alan Haines. Two specific concerns were that the trucks turning right onto Taylor Road might cross over the center line to accomplish the turn, and there would be insufficient gaps in the traffic on Taylor Road so that the cars leaving after the shift change would not have time to exit.

{¶13} On January 29, 2021, TS Tech submitted a second driveway permit application seeking to terminate the conditions and have full use of the Taylor Road driveway. On February 25, 2021, the City disapproved the application. Service Director Alan Haines sent an email that stated TS Tech had not addressed the concerns outlined in the November 26, 2019, email. It was his understanding that the proposed usage had not changed substantially, and his concerns remained. It was his opinion that the drive should remain emergency access only.

{¶14} TS Tech appealed this decision to the BZA. The BZA held a hearing on April 13, 2021. At the hearing, TS Tech provided testimony from MS Consultants about the traffic study. The BZA asked the consultant to coordinate with the traffic engineer retained by the City, Scott Seaman, prior to the next meeting. The BZA wanted the parties to address the concerns and to determine if the conditions could be safely lifted.

{¶15} Mr. Seaman is a traffic engineer with GDS Consulting retained by the City of Pataskala to provide advice regarding TS Tech's request. On April 27, 2021, he submitted Review Comments to the traffic impact study which recommended that the City not approve the request. He did not have any additional discussion with the traffic study consultant as requested by the BZA.

{¶16} At its next meeting, the BZA held a second day of the hearing regarding the application. Mr. Seaman testified and gave his opinion that the E. Broad Street driveway was not properly utilized, and the Taylor Road driveway should remain closed.

{¶17} On June 8, 2021, the BZA denied TS Tech's appeal. It stated that the traffic study considered the Taylor Road driveway open to traffic only between 3:00 and 4:00 p.m., and the study did not support the full use TS Tech was requesting. It stated that absent a

traffic study that matched the intended use, including the number of trucks using the driveway, it was unable to determine whether removing the emergency access restriction was appropriate.

{¶18} TS Tech filed a notice of appeal in the Licking County Court of Common Pleas on July 8, 2021. It also filed a motion to reopen the administrative appeal. The court granted the motion to reopen the administrative appeal on the grounds that the record was incomplete regarding the first driveway application and TS Tech was entitled to cross-examine the traffic engineer. On November 17, 2023, the court held an evidentiary hearing to give TS Tech the opportunity to cross-examine him.

{¶19} TS Tech raised three assignments of error to the court. It argued that the decision of the BZA was unconstitutional, that the decision was arbitrary, and the decision was unsupported by the record.

{¶20} The court first determined that the City of Pataskala's Codified Ordinances permitted the city and the BZA to make decisions regarding the conditions it placed on the driveway. It then ruled that the BZA's decision was constitutional.

{¶21} The court then determined that the traffic engineer's testimony "demonstrates the record's arbitrary nature." Specifically, the court pointed to the traffic engineer's testimony that the City had asked him to recommend denying the request. The court concluded that his opinions were therefore biased and "the City's reliance on the biased report demonstrates the arbitrary nature of the record."

{¶22} The court next looked at whether the decision was supported by the record as a whole. It determined that the traffic study properly analyzed the anticipated use of the Taylor Road driveway if the conditions were removed and full access allowed. It also determined that

concerns regarding right turning semi-trucks were not supported by the record. It found that the type of right-hand turn required is not illegal and there are means to make it a safe maneuver. There was no testimony that such a turn would be improper or unsafe. Accordingly, the trial court held that the BZA's conclusion that there were genuine safety issues with semi-trucks turning into the right-hand lane were unsupported by the record. Although the traffic engineer opined that it would have been helpful if the traffic study contained a Gap Analysis and a Signal Warrant Analysis, there was evidence that the Gap Analysis could not have been completed due to the COVID-19 pandemic which had interrupted normal traffic volume. The court rejected the BZA's assertion that TS Tech was unwilling to work with the City by refusing to consider any solution other than full access.

{¶23} On March 21, 2023, the trial court issued its decision and order reversing the decision of the BZA. In its opinion, it found that the BZA's decision was arbitrary and unsupported by the record. It concluded that the BZA's refusal to allow full access was "arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial reliable, and probative evidence on the whole record" and that removing the emergency access only restriction was required.

{¶24} The City has appealed that judgment entry to this Court. TS Tech filed a cross appeal.

**ASSIGNMENTS OF ERROR**

{¶25} I. THE TRIAL COURT ERRED AS A MATTER OF LAW AND ABUSED ITS DISCRETION WHEN IT MISAPPLIED THE DEFINITION OF ARBITRARY AND FAILED TO

CONSIDER THE ENTIRE RECORD FOCUSING SOLELY ON ITS OPINION OF MR. SEAMAN'S TESTIMONY.

{¶26} II. THE TRIAL COURT ABUSED ITS DISCRETION AND IGNORED COMPETENT CREDIBLE EVIDENCE IN HOLDING THAT THE BZA'S SECOND DECISION WAS UNSUPPORTED BY THE RECORD.

{¶27} III. THE TRIAL COURT ABUSED ITS DISCRETION BY FINDING THAT THE RECORD CLEARLY SUPPORTED TS TECH'S ANTICIPATED USE OF THE DRIVEWAY AND COMPOUNDED THE ERROR BY IGNORING EVIDENCE REGARDING RIGHT-TURNING SEMI-TRUCKS.

**ANALYSIS**

Standards of Review

{¶28} In an appeal of an administrative decision, R.C. 2506.04 sets forth the applicable standards of review for the court of common pleas and appellate court. It provides:

> [T]he court may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record. Consistent with its findings, the court may affirm, reverse, vacate, or modify the order, adjudication, or decision, or remand the cause to the officer or body appealed from with instructions to enter an order, adjudication, or decision consistent with the findings or opinion of the court. The judgment of the court may be appealed by any party on questions of law as provided in the Rules of Appellate Procedure and, to the extent not in conflict with those rules, Chapter 2505 of the Revised Code.

R.C.2506.04.

{¶29} The Ohio Supreme Court has construed the language of R.C. 2506.04 and distinguished the standards of review to be applied by courts of common pleas and courts of appeals when reviewing administrative decisions. *Henley v. Youngstown Bd. of Zoning*

*Appeals*, 90 Ohio St. 142, 147 (2000). In *Henly*, the Court stated "the common pleas court considers the "whole record," including any new or additional evidence admitted under R.C. 2506.03, and determines whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence." *Id.,* citing *Smith v. Granville Twp. Bd. of Trustees*, 81 Ohio St.3d 608, 612, (1998), further citation omitted. The court may not simply substitute its judgment for that of the board. *Id.* Instead, it must weigh the evidence and determine if a preponderance of substantial, reliable, probative, and substantial evidence supports the administrative decision. *Id.* If it does, the court must affirm that decision. *Id.* If it does not, it may affirm, reverse, vacate, or modify the decision, or remand the cause to the body appealed from with instructions to enter an order, adjudication, or decision consistent with the findings or opinion of the court. *Id.*

{¶30} An administrative appeal proceeds as it would in the trial of a civil action and while it is not *de novo,* it often resembles a *de novo* proceeding. *Kisil* at 34. The difference is that a common pleas  court weighs the evidence but gives the administrative decision deference. It does not substitute its judgment for that of an administrative board unless it first finds that there is not a preponderance of reliable, probative and substantial evidence to support the board's decision." *Id.*

{¶31} The standard of review to be applied by the court of appeals, however, is "'*more limited* in scope.'" (Emphasis in original.) *Henly, quoting Kisil* at 34. Courts of appeals may review the judgment of the common pleas court only on "questions of law," which does not include the same power to weigh "'the preponderance of substantial, reliable and probative evidence,'" as is granted to the common pleas court. *Id.,* citing *Kisil* at 34, fn. 4. "'It is incumbent

on the trial court to examine the evidence. Such is not the charge of the appellate court. * * * The fact that the court of appeals, or this court, might have arrived at a different conclusion than the administrative agency is immaterial. Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so.'" *Id., quoting Lorain City School Dist. Bd. of Edn. v. State Emp. Relations Bd.*, 40 Ohio St.3d 257, 261 (1988).

I.

{¶32} In its first assignment of error, the City has argued that the trial court erred as a matter of law and abused its discretion when it "misapplied the definition of arbitrary" and, by focusing solely on its opinion of the City's traffic engineer's testimony, it failed to consider the entire record. It appears from the City's brief that the issue was not the meaning of the word "arbitrary," but rather the application of the word to one piece of evidence versus the entire record. The City contends that the court failed to consider the entire record in coming to its conclusion. It maintains two documents in evidence supported the BZA's decision and were ignored by the court: the staff report and the traffic study. We disagree.

{¶33} The court made separate determinations to support its decision in this case. It found that the BZA's decision was arbitrary, and it found that the decision was unsupported by the record. The conclusion that the decision was arbitrary was based the City's traffic engineer testimony, which the court determined was biased.

{¶34} R.C. 2506.04 permits the court of common pleas to determine whether an administrative decision is arbitrary. It is one of six grounds set forth in the statute for the court to reverse an administrative decision. These grounds "are set forth in a disjunctive list, so each ground must be read to have a distinct meaning." *Shelly Materials, Inc. v. Streetsboro*

*Planning & Zoning Comm.*, 2019-Ohio-4499, ¶ 12, citing *Freedom Rd. Found. v. Ohio Dept. of Liquor Control*, 80 Ohio St.3d 202, 205 (1997). "The presence of any one of the six grounds listed in R.C. 2506.04 will therefore by itself justify a court of common pleas' reversal of an administrative order." *Id.* "In other words, courts may reverse administrative orders, for example, by finding them illegal; there is no need to find that any other ground for reversal in R.C. 2506.04 appeals." *Matthews v. Springfield-Clark CTC Bd.*, 23-Ohio-1304, ¶21 (2d Dist.).

{¶35} The court noted that the traffic engineer testified he was asked to recommend denying TS Tech's request. Based on this specific statement and his testimony from the November 17, 2023, hearing, the court determined that his report was biased. Further, the court concluded that the BZA's reliance on a biased report to deny full access demonstrated "the arbitrary nature of the record."

{¶36} The City is not contesting the finding of bias, but maintains that the court erred as a matter of law because it did not provide "the presumption of regularity that attached to the BZA proceedings." It then argued that the court ignored other evidence that would have provided justification for the BZA's decision, such as a flaw in the traffic study in limiting its focus to the hours of 3:00 p.m. to 4:30 p.m. It also pointed to the staff report discussing the need for trucks to cross the centerline of Taylor Road to exit the drive and inadequate information regarding traffic at peak hours.

{¶37}  This Court is mindful that its scope of review is limited to questions of law. *Pay N Stay Rentals, LLC, v. City of Canton*, 2020-Ohio-1573 (5th Dist.), *Hogan v. City of Mansfield Planning Commission,* 2009-Ohio-1342 (5th Dist.). "Within the ambit of questions of law" is whether the common pleas court abused its discretion in making its factual determinations. *Independence v. Office of the Cuyahoga Cty. Executive*, 2014-Ohio-4650, ¶ 14, *Weber v. Troy*

*Twp. Bd. of Zoning Appeals,* 2008-Ohio-1163, ¶ 13 (5th Dist.). The standard of review for administrative appeals is designed to strongly favor affirmance. *Frazeysburg v. Stokes* 2018-Ohio-4153, ¶21 (5th Dist.), citing *Cleveland Clinic Found. v. Cleveland Bd. of Zoning Appeals*, 2014-Ohio-4089, ¶ 30. Therefore, reversal is permitted only when the common pleas court errs in its  application or interpretation of the law, or its decision is unsupported by  a preponderance of the evidence as a matter of law." *Cleveland Clinic Found.* at ¶ 30.

{¶38} We will  first address whether the court erred in not providing the proper deference to the BZA's decision. The City relies on *State ex rel. Hicks v. Clermont Cty. Bd. of Commrs., 2002-Ohio-4237*, to argue that when the court focused on one person's testimony, it did not give the City the "presumption of regularity." This presumption means that, in the absence of evidence to the contrary, courts will presume that public officers, including public officers or public boards acting within their official capacities or performing their official duties, have properly performed their duties and acted lawfully. *State ex rel. Hicks at* ¶¶ 21, 22, citing *Toledo v. Levin*, 2008-Ohio-1119, ¶ 28, further citations omitted. This goes to the process followed by the agency and is not meant as a rubber stamp of its decisions. Moreover, any such presumption would go to the burden of proof and would merely shift the burden of production on the plaintiff to overcome the presumption and prove that a violation occurred. *Id.*

{¶39} Review of the court's decision does not support the contention that it failed to give proper deference. The court expressly stated that "Ohio law generally gives great deference to determinations made by public agencies." It further stated "the burden of showing that the decision is erroneous rests on the party contesting the decision."

{¶40} Deference to the administrative decision is built into R.C. 2506.04 which requires a finding that the decision is "unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record" to justify reversal. In keeping with the idea of deference, the trial court does not have a true *de novo* review. It may not substitute its judgment for that of an administrative board unless it first finds that there is not a preponderance of reliable, probative, and substantial evidence to support the board's decision. *Kisil at* 34.

{¶41} The trial court correctly set forth its standard of review for the BZA's decision as well as the deference required. Its conclusion that there was not a preponderance of the evidence to support the administrative decision does not negate the deference it afforded.

{¶42} We now address whether the court properly considered the record as a whole. The record in this case included the permit applications, a staff report from the City, the minutes and recordings from the BZA meetings, the traffic impact study, emails between the parties, and the BZA decision. Both the traffic engineer for the City and a representative from the Traffic Study were before the BZA to provide information and answer questions. The common pleas court reviewed that record and deemed it incomplete. It then endeavored to complete it by holding its own hearing specifically to allow for the cross examination of the traffic engineer. In its decision, it expressly stated that it relied on the recordings and official written transcripts provided.

{¶43} In arguing its assignment of error, the City maintained that the trial court incorrectly concluded that the BZA's decision was arbitrary based solely on the testimony of the traffic engineer's testimony, and not the entire record. It then claimed that the court did not consider other evidence, such as the staff report and traffic study. It maintained that the staff

report supported the BZA's denial because of the concern that trucks would need to cross the centerline and traffic would be degraded on Taylor Road. It also claimed that the traffic study was flawed because there was inadequate information regarding traffic at peak hours and it addressed only outbound traffic between the hours of 3:00 p.m. to 4:30 p.m.

{¶44} In an R.C. 2506.04 appeal, the court of common pleas is required "to assess the credibility of the witnesses as well as the probative character of the evidence, and to determine the weight to be given to that evidence." *Fulmer v. W. Licking Joint Fire Dist.*, ¶ 16 (5th Dist.), *Orange Barrel Media v. Columbus*, 2012-Ohio-6205, ¶ 8 (10th Dist.). The common pleas court reviewed the record, as is reflected in its opinion. Because the City began its analysis of the request to remove the conditions with an outcome-based model, the court concluded that the BSA's decision was arbitrary. The court was tasked with assessing the credibility of the witnesses and the weight to give their testimony. Having discounted the City's traffic engineer's opinion as an expert in traffic for his predetermined outcome, there was no other expert opinions in support of the City's position.

{¶45} A review of other evidence did not convince the court that the BZA's decision was supported by a preponderance of the evidence. The court's analysis of the staff report and traffic study will be addressed in the second assignment of error. The court properly exercised its review of the BZA's decision and did not abuse its discretion in doing so. Appellants first assignment of error is overruled.

II.

{¶46} In the second assignment of error, the City has argued that the trial court abused its discretion and ignored competent, credible evidence in holding that the BZA's decision was unsupported by the record. First, it claimed the court failed to properly apply the burden of proof when it resolved numerous disputed issues in favor of TS Tech. Second, it claimed the court ignored competent, credible evidence to support the BZA's decision. We disagree with these arguments.

{¶47} R.C. 2506.04 permits the court of common pleas to determine whether the order is "unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record" to justify reversal of an administrative decision. In its review, the court's focus is on the agency's explanation or justification for its decision and whether that decision can be reasoned by the body of evidence. It has discretion in deciding that an administrative decision was or was not supported by preponderance of the evidence. *Shelly Materials*, 2019-Ohio-4499, at ¶ 18, citing *Boice v. Ottawa Hills*, 2013-Ohio-4769, ¶ 7.

{¶48} The trial court may not substitute its judgment for that of an administrative board unless it first finds that there is not a preponderance of reliable, probative and substantial evidence to support the board's decision." *Kisil* at 34. The Ohio Supreme Court has defined "reliable," "probative," and "substantial" as follows:

(1) "Reliable" evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that the evidence is true.
(2) "Probative" evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue.
(3) "Substantial" evidence is evidence with some weight; it must have importance and value.

*Bartchy v. State Bd. of Edn.*, 2008-Ohio-4826, ¶ 39, quoting *Our Place, Inc. v. Ohio Liquor Control Comm.*, 63 Ohio St.3d 570, 571 (1992).

{¶49} The City has argued that the court failed to properly apply the burden of proof and it ignored evidence that supported the BZA's decision. It maintains that the court failed to recognize that "TS Tech had the burden of proof on dispute issues", and it failed to "defer to BZA in areas of its expertise." The examples it gave were the court's failure to consider the staff report which found issues with the traffic study and the traffic study itself.

{¶50} The record does not support the City's contention that the court ignored the staff report and the traffic study. The City's concerns were that the trucks would cross the centerline, the traffic study did not provide information at peak hours, and the study addressed only outbound traffic only between the hours of 3:00 to 4:30. It claimed these concerns were evident from the traffic study itself and documented in the staff report reviewing the study. This evidence was justification for the BZA's decision, making the court's reversal an abuse of discretion as a matter of law.

{¶51} The court expressly addressed the issue of right turning trucks and concluded that the City's concerns were unsupported by the record. It stated this "is not an illegal maneuver for semi-trucks, and the Ohio Commercial Driver's License Manual describes how such turns can be made safely." There was admittedly no expert testimony that this maneuver was improper or unsafe. At least three other businesses requiring semi-trucks operated on Taylor Road. Further, the car traffic would not increase the volume on Taylor Road because those same cars would have driven on it after leaving TS Tech and driving through the E. Broad property.

{¶52} Similarly, the court addressed the parties conflicting arguments as to whether the traffic study was inconsistent with TS Tech's anticipated use of the driveway. It determined that although "the BZA had concerns" regarding the traffic study, the record supported TS Tech's anticipated use.

{¶53} We have reviewed the record as well, not to weigh the evidence, but to ensure that there was appropriate evidence for the court of common pleas' decision. For example, the conditions on the original request to modify the driveway contained the following provision:

> 5. All necessary approvals shall be obtained from the City of Pataskala if the driveway is to be altered or upgraded to full access.

{¶54} This language demonstrates that the City itself contemplated a time when TS Tech would seek to alter the driveway or upgrade it to full access. In addition, both the driveway application and the traffic study discussed cars leaving between 3:00 to 4:30 after the shift change, with two trucks crossing Taylor Road during this hour. This is evidence of anticipated use. There was also evidence that the traffic would be outbound only because there was no security checkpoint at the Taylor Road driveway for incoming traffic.

{¶55} Even the property's zoning and the nature of the cross-dock give an inclination of anticipated use. The property is located in a Light Manufacturing District (M-1) as defined by Chapter 1251 of the Pataskala Codified Ordinance. The purpose of this designation "is to encourage the development of manufacturing establishments which are clean and quiet." PCO 1251.01. It applies to manufacturing operations "which operate entirely within closed structures and generate minimal industrial traffic." It is undisputed that the cross-dock was built to transfer supplies between trucks, making trucks an inherent part of its purpose.

{¶56} Despite the City's contention that the court of common pleas substituted its judgment for the BZA's, there is evidence in the record that supports the court's decision. The court did not abuse its discretion as a matter of law when it found that there was not a preponderance of reliable, probative, and substantial evidence to support the BZA's decision to deny access to Taylor Road. The second assignment of error is overruled.

III.

{¶57} In the third assignment of error, the City has argued that the trial court abused its discretion when it concluded that the record clearly supported TS Tech's anticipated use of the driveway and "compounded the error when it ignored evidence regarding right-turning semi-trucks." It claimed that the court substituted its judgment for the BZA's. This argument is essentially the mirror image of the second assignment of error.

{¶58} In resolving the City's second assignment of error, this Court concluded that the common pleas court properly exercised its discretion when it found that there was not a preponderance of reliable, probative, and substantial evidence to support the City's decision to deny driveway access to Taylor Road. Implicit in that decision is that it also acted with proper discretion when it found the corollary to be true - that the evidence supported the property owner. Accordingly, the third assignment of error is overruled.

TS Tech's Conditional Cross-Assignment of Error

{¶59} TS Tech filed a conditional cross-assignment of error that the conditions are unconstitutional. Because we have overruled the City's assignments of error, we will not address the constitutionality issue in this opinion. See *Germanoff v. Aultman,* 2002-Ohio-5054, ¶ 56 (5th Dist.).

## CONCLUSION

{¶60} Defendants-Appellants' assignments of error are overruled. The Plaintiff-Appellee's cross assignment of error is moot. The judgment of the Licking County Court of Common Pleas is affirmed.


By: Delaney, P.J.,

Hoffman, J. and

Baldwin, J., concur.