[Cite as *Minerva Dairy, Inc. v. Minerva*, 2025-Ohio-902.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
| | : | JUDGES: |
| MINERVA DAIRY, INC. | : | Hon. William B. Hoffman, P.J. |
| | : | Hon. Robert J. Montgomery, J. |
| Plaintiff-Appellee | : | Hon. Kevin W. Popham, J. |
| | : | |
| -vs- | : | |
| | : | Case No. 2024 CA 00097 |
| VILLAGE OF MINERVA, OH | : | |
| | : | |
| Defendant-Appellant | : | OPINION |

CHARACTER OF PROCEEDING:     Appeal from the Stark County Court of
                             Common Pleas, Case No. 2023CV00901

JUDGMENT:                    Affirmed

DATE OF JUDGMENT ENTRY:      March 14, 2025

APPEARANCES:

For Plaintiff-Appellee            For Defendant-Appellant

EDMOND J. MACK                    STEPHEN N. HAUGHEY
Mack Law Co., LPA                 301 E. Fourth Street
Box 8276                          Suite 3300
Canton, OH 44711                  Cincinnati, OH 45202

*Popham, J.*

{¶1} Appellant The Village of Minerva ("Village") appeals the May 30, 2024, judgment entry of the Stark County Court of Common Pleas. Appellee is the Minerva Dairy, Inc. ("Dairy").

*Facts & Procedural History*

{¶2} The Dairy operates a pretreatment plant, and does so pursuant to a permit that was issued by the Ohio Environmental Protection Agency ("EPA") on August 31, 2015. In 2020, the Village asserted the Dairy released excessive quantities of Total Suspended Solids ("TSS") and Excessive Carbonaceous Biochemical Oxygen Demand" ("CBOD"), and sought to disconnect the Dairy. After a show cause hearing was deferred, the parties reached a settlement in August of 2020 to resolve the Dairy's alleged non-compliance. The Dairy paid the Village a fine of $140,000. The settlement agreement also provided other details regarding reporting, calculation, and payment terms of discharges that exceeded limitations. There was also language in the settlement agreement regarding covenants not to sue or otherwise initiate any form of civil, administrative, or judicial proceedings of any kind against the Dairy with respect to the claims released.

{¶3} On March 21, 2023, the Dairy notified the Village and the EPA of maintenance activities it was going to complete at the pretreatment facility. In response, on March 23, 2023, James Williams ("Williams"), the Service Director for the Village, issued a "Notice of Violation and Impending Revocation of Industrial Waste Permit and/or Suspension/Disconnection of Service" ("NOV") and "Notice of Show Cause Hearing on Violation and Impending Revocation of Industrial Waste Permit and/or

Suspension/Disconnection of Service and Assessment of Costs and Fines" to the Dairy. Williams stated the documents served as written notice of the violations, pursuant to Minerva Village Ordinance 921.16(a), and that the conduct of the Dairy justified either revocation of the industrial waste permit under which the Dairy discharges from its pretreatment system and/or suspension/disconnection of service. Williams asserted, "data from analysis of samples of effluent from [the] Dairy pretreatment system has documented that [the] Dairy has violated the TSS limitation on numerous occasions." Williams attached Exhibits A1 and A2, which appear to be Excel spreadsheets with dates and numbers on them. The NOV also purported to impose "civil damages" and "daily fines in the amount of $206,384.52." The hearing notice stated a show cause hearing was scheduled for April 5, 2023.

{¶4} The Dairy submitted a preliminary response on March 24, 2023, generally denying the violations. Additionally, the Dairy stated its compliance manager needed time to review the testing submitted by the Village in its NOV, and stated this would take "a few weeks." The Dairy also requested additional time to provide an opportunity for the parties to meet and confer regarding the allegations in lieu of the show cause hearing. On March 30, 2023, the Village issued an Amended Notice of Show Cause hearing, rescheduling the hearing for April 11, 2023. The Village did not respond to the Dairy's request for a meeting prior to proceeding with the show cause hearing.

{¶5} The Dairy responded to the Village's amended notice on April 7, 2023, again requesting a meeting to discuss the issues and asking the Village to suspend the show cause hearing. The CEO of the Dairy stated he would not be able to attend on April 11,

2023, and requested a continuance. Williams responded on April 10, 2023, denying the request and stating the show cause hearing would go forward on April 11, 2023.

{¶6} The show caused hearing was held on April 11, 2023, and lasted less than twenty-five minutes. At the beginning of the hearing, Williams was sworn in as the hearing officer, but stated anyone testifying as a witness would be administered an oath at the time they offered their testimony. Immediately after Williams called the hearing to order, Venae Watts ("Watts"), the treasurer and secretary of the Dairy, asked if the Village would continue the show cause hearing in order to have a meeting between the Village and the Dairy. Williams denied the request. Watts then stated, "I would ask that you please give me the time to gather my information. The information received this morning at 10:00 a.m., I didn't have time to prep that with counsel. I ask to please be given that time." Williams stated they would have "some time limits" for her to "submit data." Watts responded, "So I would please ask that you give me time to have counsel, who was unavailable to come today, short notice. I please ask that you allow me time to get counsel to come to this hearing." Williams denied her request, stating the Village provided the Dairy with sufficient notice. Watts stated, "I did obtain counsel, they just were not able to come. I ask that you please take consideration."

{¶7} Williams entered the March 23, 2023, NOV into the record, along with Exhibits A-1 and A-2. Williams stated, "support for the calculation of all civil damages" would be "entered into the record." Williams also stated the letters received from the Dairy in April would be made part of the record. Williams then asked Watts if she "had anything to say at this time." Watts responded, "I would like to say that I don't have counsel at this moment here with me for representation. And I ask again that you please

– I'm now point on this; that you please give me time to have counsel available to be present and to review the information with my counsel that has been retained and is unavailable to attend tonight * * *."  Williams denied her request, again stating the Dairy received sufficient notice of the hearing and asked if "anyone had any questions."  Watts stated, "I don't have a lawyer present, I don't believe I should proceed until I have representation with me."

{¶8} Williams gave a brief summary, listing the number of alleged violations the Dairy had in each month (January, February, and March 2023).  After this brief summary, the mayor stated, "Is that it?"  Williams stated, "Okay, that concludes the show cause hearing."  He stated the "matter would be taken under advisement by the Service Director [himself] and a written determination will be rendered with copies provided to the Village Council and respondent.  The record will be kept open for a period of one week."  The meeting was then adjourned.  On April 18, 2023, the Dairy sent a letter to the Village.  In the letter, the Dairy explained it had been working with the EPA, but had not heard from them with regard to new permits.  Further, the Dairy stated it "continues to have concerns regarding potential sample analysis inaccuracies as previously reported with the sampling data and information provided to the Village * * *."

{¶9} On April 25, 2023, Williams issued a "Report and Recommendations of Village Service Director" ("Report").  Williams identified a series of instances where the effluent from the Dairy revealed levels of TSS and CBOD in excess of the limitation set forth in the permit, the latest violation listed as March 4, 2023.

{¶10} In the "Conclusions" portion of the Report, Williams stated that "based on personal experiences from previous visits (issues with the Minerva Dairy effluent

discharge) and photos of the Dairy's secondary clarifier dated March 22, 2023, the Minerva Dairy operates its secondary clarifier with an excessively large sludge blanket with less than a foot, usually only inches, of clear water prior to discharge over the weirs." Williams then included citations from the Environmental Resources Training Center (about the sludge blanket), the Water Environment Federation (sludge blanket appropriate depths), and the EPA (proper sludge blanket depths). Williams concluded the Dairy was either intentionally disposing of solid waste from its pretreatment plant into the publicly owned treatment works system ("POTW"), or it was being operated in an incompetent manner.

{¶11} In the "Recommendation" portion of the document, Williams stated the Dairy "failed to demonstrate good cause in order to avoid disconnection of service to the Village's POTW." Williams recommended the Village revoke authority for the Dairy to discharge to the POTW and provide notice accordingly, and also impose fines and costs as stated in the March 23, 2023, NOV.

{¶12} On the same day as Williams issued the report (April 25, 2023), Village Council entered into executive session to discuss the Report. When the regular meeting resumed after the executive session, Village Council voted to approve the Report, and voted to assess fines and damages against the Dairy. There is nothing in the record demonstrating the Dairy was given notice of the April 25th executive session or meeting. Rather, Williams sent a letter to the Dairy on April 27, 2023, notifying them: Village Council approved the Report, the Dairy's Industrial Waste Permit was revoked, the Dairy's authority to discharge at the POTW was terminated, and costs/fines were assessed by Village Council ("Disconnection Order"). Williams attached his Report to the letter, along

with an invoice detailing the costs and fines. The Dairy paid $100,000 to prevent the imminent closure of the business after their receipt of the letter.

{¶13} The Dairy filed an administrative appeal with the Stark County Common Pleas Court on May 19, 2023. The administrative record was filed on June 23, 2023. On June 26, 2023, the Village filed a motion for emergency relief from stay, arguing the Dairy continued to violate the wastewater permits. The trial court denied the motion for emergency relief, but ordered the parties to meet with the EPA within fourteen days and ordered the Dairy to take any necessary steps as ordered by the EPA. The Dairy met with the EPA on July 20, 2023.

{¶14} On August 7, 2023, the Dairy moved the trial court for a de novo hearing pursuant to R.C. 2506.03. The Village filed a memorandum in opposition, arguing the administrative record contained all pertinent matters, and a de novo hearing was unnecessary. The trial court granted the Dairy's motion for a de novo hearing. Though the de novo hearing was originally set in September of 2023, it was continued several times while the trial court held status conferences and settlement conferences, and ultimately was re-scheduled for April 30, 2024.

{¶15} Prior to either party presenting any evidence or witnesses at the April 30, 2024, hearing, the trial court expressed its concerns about the lack of the sworn evidence or testimony in the administrative record. The trial court informed the parties that it viewed the appeal as containing two issues: (1) whether the Disconnection Order was unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence (including any due process issues), and (2) whether the Disconnection Order and/or Minerva Village

Ordinance Chapter 921 were unconstitutional as applied to the Dairy. The parties both agreed the trial court's interpretation of the two issues was correct.

{¶16} At the suggestion of counsel for the Village, the parties and the trial court agreed that both the Village and the Dairy would have fourteen days in which to submit their briefs on the first issue, i.e., whether the Disconnection Order was unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of the substantial, reliable, and probative evidence. The trial court stated if it upheld the Disconnection Order, it would set another date for an evidentiary hearing so the Dairy could present evidence on its constitutional claims.

{¶17} On May 10, 2024, the Village filed a motion to dismiss for lack of jurisdiction and mootness. In the motion, the Village stated, "the administrative order from which this appeal was taken has been rescinded" because, on May 9, 2024, Williams issued a "Recission of Report and Recommendations of the Village Service Director." The Village argued the trial court lacked jurisdiction for any review under Chapter 2506 and the administrative appeal to the trial court was moot. The Village also stated in its motion that it would issue a new show cause order to the Dairy.

{¶18} The Dairy filed its brief to reverse the Disconnection Order on May 17, 2024, arguing why the Disconnection Order was unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by a preponderance of substantial, reliable, and probative evidence, and in violation of the Dairy's due process rights. In their brief, the Dairy argued: the Village failed to comply with its own ordinance in issuing the Disconnection Order; the Disconnection Order was unsupported by substantial, reliable, or probative evidence because no witnesses were put under oath at the hearing, no witnesses were

directly examined or cross-examined at the hearing, and no evidence was properly introduced at the hearing; the hearing was not fair and impartial; and the Dairy was denied due process. In their brief, the Dairy also argued the trial court should reverse and vacate the Disconnection Order rather than remand the matter back to the Village.

{¶19} The Dairy also filed a separate memorandum in opposition to the Village's motion to dismiss, arguing the Village did not have jurisdiction to unilaterally rescind the Disconnection Order during the pendency of the administrative appeal to the trial court.

{¶20} The Village filed a reply in support of its motion to dismiss on May 24, 2024. In its reply, the Village stated, "while appellant has elected to submit a brief addressing the purported merits of this appeal, there exists no determination subject to review under the standard of R.C. Chapter 2506" because "the administrative order from which this appeal was taken has been rescinded." Further, that there was "no basis for the court to decide any questions posed by appellant in its brief." Because the Village chose to focus solely on the mootness/lack of jurisdiction issues contained in its motion to dismiss, the Village never submitted a brief in support of its argument that the Disconnection Order was not unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by a preponderance of the substantial, reliable, and probative evidence.

{¶21} The trial court issued a judgment entry on May 30, 2024, addressing the merits of the Dairy's administrative appeal. The trial court noted that the Village did not address any R.C. 2506 issues and "ignored" the agreement by the parties and the court at the April 30th hearing to submit briefs addressing the R.C. 2506 issues. The trial court found the Disconnection Order was arbitrary and capricious because the proceedings lacked due process and fundamental fairness. The trial court also found the Village failed

to comply with its own rule of law pursuant to Village Ordinance Chapter 921 and, because of this lack of due process, the decision was arbitrary, capricious, and unsupported by the preponderance of substantial, reliable, and probative evidence. Finally, the trial court found, in considering the whole record, the decision of the Village was unsupported by a preponderance of reliable, substantial, and probative evidence because there was no sworn testimony at the hearing, the Report contained factual assertions not contained in the NOV or mentioned at the show cause hearing, and the Dairy disputed the accuracy of the information and testing provided by the Village.

{¶22} The trial court also denied the Village's motion to dismiss. The trial court cited the holding of the Supreme Court of Ohio that, "it is well established that in the absence of express statutory authority to the contrary, once a decision of an administrative board is appealed to the court, the board is divested of its inherent jurisdiction to reconsider, vacate, or modify that decision." *Baltimore Ravens, Inc., v. Self-Insuring Employers Evaluation Bd.*, 2002-Ohio-1362; *Lorain Edn. Assn. v. Lorain City School Dist. Bd. of Edn.*, 46 Ohio St.3d 12 (1989). Thus, the trial court found Williams' alleged "rescission" was in violation of Supreme Court precedent.

{¶23} Further, the trial court found Williams' alleged "rescission" was incomplete and did not make the matter moot because it did not address the $100,000 the Dairy paid to avoid disconnection. The trial court reversed and vacated the Disconnection Order, and ordered the Village to return the fines paid by the Dairy. The trial court also released the funds in escrow to the Dairy.

{¶24} The Village appeals the May 30, 2024, judgment entry of the Stark County Court of Common Pleas and assigns the following as error:

{¶25} "I. THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING THAT THE VILLAGE'S DECISION THAT ENFORCED SUBSTANTIAL, UNCONTESTED VIOLATIONS OF THE VILLAGE'S PRETREATMENT ORDINANCE WAS NOT SUPPORTED BY A PREPONDERANCE OF EVIDENCE, AND ARBITRARY, CAPRICIOUS, AND UNREASONABLE.

{¶26} "II. THE TRIAL COURT ABUSED ITS DISCRETION IN FINDING THAT THE VILLAGE FAILED TO COMPLY WITH THE PROCEDURES IN ITS PRETREATMENT ORDINANCE, AND THAT THE DAIRY WAS ENTITLED TO A DE NOVO HEARING.  IN THE ALTERNATIVE, IT ABUSED ITS DISCRETION IN NOT FINDING THAT THE NONCOMPLIANCE WAS DE MINIMUS, DID NOT PREJUDICE THE DAIRY, OR WAS WAIVED.

{¶27} "III. THE TRIAL COURT ERRED IN FINDING THAT THE DAIRY HAD CONSTITUTIONAL DUE PROCESS RIGHTS BEYOND THE PROCEDURAL RIGHTS AFFORDED BY THE VILLAGE'S PRETREATMENT ORDINANCE.

{¶28} "  IV. THE TRIAL COURT ERRED IN VACATING THE VILLAGE'S DECISION AFTER FINDING NONCOMPLIANCE WITH THE PROCEDURES IN THE PRETREATMENT ORDINANCE, RATHER THAN HOLDING A DE NOVO HEARING OR REMANDING THE DECISION FOR THE VILLAGE TO HOLD THE HEARING."

*Standard of Review*

{¶29} In an appeal of an administrative decision, R.C. 2506.04 sets forth the applicable standards of review for the court of common pleas and appellate court.  It provides:

[T]he court may find that the order, adjudication, or decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record. Consistent with its findings, the court may affirm, reverse, vacate, or modify the order, adjudication, or decision, or remand the cause to the officer or body appealed from with instructions to enter an order, adjudication, or decision consistent with the findings or opinion of the court. The judgment of the court may be appealed by any party on questions of law as provided in the Rules of Appellate Procedure, and, to the extent not in conflict with those rules, Chapter 2506 of the Revised Code.

{¶30} The Supreme Court of Ohio has construed the language of R.C. 2506.04 and distinguished the standards of review to be applied by courts of common pleas and courts of appeals when reviewing administrative decisions. *Henley v. Youngstown Bd. of Zoning Appeals*, 90 Ohio St.3d 142 (2000). In *Henley*, the Court stated, "the common pleas court considers the 'whole record,' including any new or additional evidence admitted under R.C. 2506.03, and determines whether the administrative order is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of the substantial, reliable, and probative evidence." *Id.,* citing *Smith v. Granville Twp. Bd. of Trustees*, 81 Ohio St.3d 608 (1998), further citation omitted. The court may not simply substitute its judgment for that of the Village. *Id.* Instead, it must weigh the evidence and determine if a preponderance of substantial, reliable, and probative evidence supports the administrative decision. *Id.* If it does not, it may affirm, reverse, vacate, or modify the decision, or remand the cause to the body appealed from

with instructions to enter an order, adjudication, or decision consistent with the findings or opinion of the court. *Id.*

{¶31} An administrative appeal proceeds as it would in the trial court in a civil action and, while it is not de novo, it often resembles a de novo proceeding. *Kisil v. City of Sandusky,* 12 Ohio St.3d 30 (1984). The difference is that a common pleas court weighs the evidence but gives the administrative decision deference. *Id.* It does not substitute its judgment for that of an administrative board unless it first finds that there is not a preponderance of reliable, probative, and substantial evidence to support the administrative decision. *Id.*

{¶32} The standard of review to be applied by the court of appeals, however, is "more limited in scope." *Id.* Courts of appeals may review the judgment of the common pleas court only on "questions of law," which does not include the same power to weigh "the preponderance of substantial, reliable and probative evidence, as is granted to the common pleas court." *Id.* "It is incumbent on the trial court to examine the evidence. Such is not the charge of the appellate court. * * * The fact that the court of appeals, or this court, might have arrived at a different conclusion than the administrative agency is immaterial. Appellate courts must not substitute their judgment for those of an administrative agency or a trial court absent the approved criteria for doing so." *Lorain City School Dist. Bd. of Edn. v. State Emp. Relations Bd.*, 40 Ohio St.3d 257 (1988).

I. & II.

{¶33} In its brief, the Village argues its first and second assignments of error together. Accordingly, we will address the first and second assignments of error together.

{¶34} We initially note that, because the Village failed to file a brief regarding the R.C. 2506 issues in the case as its counsel suggested at the April 30th hearing, the Village never made the arguments contained in Assignments of Error I or II to the trial court. "A failure to raise an issue during an administrative appeal before the common pleas court operates as a waiver of the party's right to assert the issue for the first time to an appellate court." *State ex rel. Zollner v. Indus. Comm.*, 66 Ohio St.3d 276 (1993); *Gross Builders v. City of Tallmadge*, 2005-Ohio-4268 (9th Dist.); *Marks v. Aurora Bd. of Zoning Appeals*, 2016-Ohio-5182 (11th Dist.). However, even if we were to consider the Village's arguments, we find no error in the trial court's determinations.

{¶35} In this case, the trial court made three separate determinations to support its decision. It found the Disconnection Order was (1) arbitrary and capricious because the proceedings lacked due process and fundamental fairness; (2) arbitrary, capricious, and unsupported by the preponderance of substantial, reliable, and probative evidence because the Village failed to comply with its own ordinance; and (3) in considering the whole record, the decision was unsupported by the preponderance of reliable, substantial, and probative evidence.

{¶36} R.C. 2506.04 permits courts of common pleas to determine whether an administrative decision is unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by the preponderance of substantial, reliable, and probative evidence on the whole record. "These grounds for reversal are set forth in a disjunctive list, so each ground must be read to have a distinct meaning." *Shelly Materials, Inc. v. City of Streetsboro Planning & Zoning Comm.*, 2019-Ohio-4499, ¶ 12. Thus, the "presence of any one of the six grounds listed in R.C. 2506.04 will therefore by itself justify a court of

common pleas' reversal of an administrative order." *Id.* "In other words, courts may reverse administrative orders, for example, by finding them illegal; there is no need to find that any other ground for reversal in R.C. 2506.04 applies." *Matthews v. Springfield-Clark CTC Bd.*, 2023-Ohio-1304, ¶ 21 (2nd Dist.).

**{¶37}** The Village makes separate arguments in its first and second assignments of error.

*Trial Court Overlooked or Misrepresented Facts*

**{¶38}** The Village contends the trial court committed error in finding the Village failed to follow the procedures in its own ordinance and in finding the Village did not afford the Dairy due process. The Village argues the trial court overlooked or misrepresented facts when concluding that the Disconnection Order was arbitrary and capricious.

**{¶39}** The trial court concluded the Disconnection Order was arbitrary and capricious because the proceedings lacked due process and fundamental fairness. The Village cites to specific statements in the trial court's judgment entry in which the Village believes the trial court "misrepresented" the facts. However, these statements cited by the Village do not reflect the entirety of the trial court's analysis, and are only small sections or excerpts of the trial court's entry. We find the specific findings of fact the trial court utilized in its analysis determining the Disconnection Order was arbitrary and capricious to be supported by the record.

**{¶40}** The factual determinations the trial court made in finding the Disconnection Order was arbitrary and capricious are as follows: Watts repeatedly asked for counsel throughout the hearing; Watts received pertinent information only a few hours before the hearing; Watts was provided no description of what would be taking place at the hearing

except it was being called to order; Watts was not asked to give an opening statement, present exhibits, or call any witnesses; Watts was not advised of any right to cross-examine witnesses; the only exchange Williams had with Watts was to deny her requests for a meeting and counsel; Williams offered self-serving statements; Williams introduced evidence that was not offered to Watts to review; there was no sworn testimony provided by any witness on behalf of the Village at hearing; Williams was never sworn in as a witness and his conclusory statements were not subject to cross-examination; Williams acted as the prosecutor, judge, and jury all in one; the hearing lasted only twenty-five minutes; the Report prepared by Williams after the hearing contained a host of new factual contentions and conclusions regarding the Dairy's operations that were not mentioned in the NOV or raised during the hearing; it appears the new factual contentions were discussed by Williams and Council during executive session, without notice to the Dairy to refute any of the assertions; and the Disconnection Order contains no sound reasoning to support the conclusion.

{¶41} This Court is mindful that its scope of review is limited to questions of law. *Pay N Stay Rentals, LLC, v. City of Canton*, 2020-Ohio-1573 (5th Dist.). "Within the ambit of questions of law for appellate-court review is whether the common pleas court abused its discretion" in making its factual determinations. *City of Independence v. Office of the Cuyahoga Cty. Executive*, 2014-Ohio-4650, ¶ 14. In examining each one of the factual findings made by the trial court as listed above, we find the trial court did not abuse its discretion in making these determinations, as they accurately reflect the information contained in the administrative record, including the transcript.

**{¶42}** The Village also argues the trial court committed error in finding "the undisputed evidence confirms the Village failed to comply with its own rule of law pursuant to Village Ordinance Chapter 921 in numerous respects." The ordinance at issue is contained in the Codified Ordinances of Minerva, Ohio, specifically, Ordinance 921.16, which is entitled "Public and Private Sewers; Use Regulations and Connections – Enforcement." The pertinent sections of the ordinance provide as follows:

(a)  Whenever the Service Director finds that any industrial user has violated, or is violating provisions of this chapter * * * the Service Director shall serve upon such industry a written notice, either personally, by certified mail or by electronic mail, stating the nature of the violation. Within ten days of receipt of such notice, the industry shall respond personally or in writing to the Service Director advising him or her of its position with respect to the allegations. Thereafter, and if deemed necessary by the Service Director, the parties shall meet to ascertain the veracity of the allegations and, if necessary, establish a plan for the correction thereof.

\* \* \*

(e) If the violation is not corrected by timely compliance, the Service Director may order an industrial user who causes a violation or allows an unauthorized discharge to show cause before the Service Director why the proposed enforcement action should not be taken. A written notice shall be served on the offending party specifying the time and place of a hearing to be held by the Service Director regarding the violation and directing the industrial user to show cause, before the Service Director, why the

proposed enforcement action should not be taken.  The notice of hearing shall be served personally or by registered certified mail (return receipt requested) at least fifteen days before the hearing.* * * The Service Director shall conduct the hearing and take the evidence.  At any public hearing, testimony must be under oath and recorded stenographically.* * * After the Service Director has reviewed the evidence, an order may be issued by the Village to the industrial user responsible for the violation directing that, following a specified time period, the sewer service be discontinued unless adequate treatment facilities, devices, or other related appurtenances shall have been installed * * *.

(g) The Village may recover civil damages for any expense, loss or damage, including attorneys' fees, court costs, court reporter's fees, and any other expense of litigation, occasioned by a user's violation of these regulations * * *."

{¶43}  The trial court found the Village did not comply with these sections because: the Village failed to meet with the Dairy despite repeated requests by the Dairy to meet; the Village never afforded the Dairy any parameters for "timely compliance"; the first notice of hearing gave the Dairy only thirteen days' notice rather than the required fifteen days' notice and the second notice of hearing gave the Dairy only twelve days' notice rather than the required fifteen days' notice; the show cause hearing was not conducted in public as required; no sworn testimony was provided by anyone at the show cause hearing as required; and nothing in either (e) or (g) provides Williams the authority to impose the "civil damages" provided for in (g) in an order issued under (e).

**{¶44}** We again find the trial court did not abuse its discretion in making these factual findings because the factual findings accurately reflect the information contained in the record. We also find the trial court did not commit error in its legal conclusion. "An administrative agency cannot ignore its own rules." *In re Application of Columbus S. Power Co.*, 2011-Ohio-2383, ¶ 35, quoting *State ex rel. Kroger Co. v. Morehouse*, 74 Ohio St.3d 129 (1995); *Anderson v. City of Vandalia*, 2005-Ohio-118 (2nd Dist.) (if BZA fails to comply with its code in reaching its recommendation, then code provisions are superfluous and we presume drafters of the code did not intend to create superfluous provisions).

**{¶45}** While the Village offers various explanations as to why their actions were not strictly in compliance with the ordinance, these explanations were never offered to the trial court. Further, we find the trial court's determination that, in the aggregate, the multiple instances of the Village's failure to follow its ordinance resulted in a lack of due process to the Dairy, not to be an abuse of discretion.

**{¶46}** Additionally, the Village makes arguments as to why due process was met in this case because the Dairy obtained knowledge about the procedures contained in the ordinance in the previous 2020 case that the Dairy should have applied in this case, and how difficult it was for the Village to arrange the schedules of nine elected officials and/or employees to attend the hearing and pay for a court reporter. However, with regards to due process, what knowledge the Dairy may or may not have gained in the previous case is not relevant to this case, as the inquiry as to whether due process exists depends on the facts of each case. *Ohio Assn. of Public School Emp., AFSCME, AFL-CIO, v. Lakewood City School Dist. Bd. of Edn.*, 68 Ohio St.3d 175 (1994). Further, the law

focuses on whether the Dairy had a meaningful opportunity to be heard and was afforded fundamental fairness, not how difficult it was for the administrative body to organize attendance at the hearing.

{¶47} In arguing the trial court "overlooked facts," the Village essentially asks this Court to weigh the evidence, which is not the role of this Court. We have reviewed the record, not to weigh the evidence, but to ensure there was appropriate evidence for the court of common pleas' decision. Based upon the record, we cannot say the trial court abused its discretion by determining the proceedings lacked due process and fundamental fairness, thus rendering the Disconnection Order arbitrary and capricious.

*De Minimus / Waiver*

{¶48} The Village contends the procedures contained in its ordinance that it failed to follow, including not conducting the hearing public and not giving the Dairy fifteen days' notice individually for each hearing, were either de minimis or not objected to by the Dairy. As to the Village's argument about waiver, the Village did not notify the Dairy in any of the correspondence or NOV that the show cause hearing would not be public. When Watts appeared at the hearing, she repeatedly requested a continuance to obtain and/or have counsel present at the show cause hearing. With regards to the argument that the lack of compliance with its ordinance was de minimis, it is clear from the trial court's judgment entry that it did not find these two issues were the sole reasons for its determination. Rather, the trial court found the aggregate effects of the Village's failure to follow its own ordinance resulted in a decision that was arbitrary and lacked due process. We find no abuse of discretion in the trial court's determination, particularly when the Village failed to present either of these arguments (waiver/de minimis violations) to the trial court.

*Alleged Failure to Afford the Village's Decision a Presumption of Validity*

{¶49} The Village argues the trial court failed to afford the Village's decision a presumption of validity and, because the Dairy failed to dispute the violations, the trial court's finding that the Disconnection Order was not supported by a preponderance of the reliable, substantial, and probative evidence was an abuse of discretion.

{¶50} As this Court has previously stated, "deference to the administrative decision is built in into R.C. 2506.04." *TS Tech USA Corp. v. City of Pataskala Bd. of Zoning Appeals*, 2024-Ohio-5534, ¶ 40 (5th Dist.); *Okey v. City of Alliance Planning Comm.*, 2019-Ohio-2390 (5th Dist.) (simply because a trial court reverses an administrative order does not lead to the conclusion the court erroneously shifted the burden). At both the April 30th hearing and in its judgment entry, the trial court correctly set forth its standard of review, and cited the correct statute that includes the deference required. The trial court's conclusion that there was not a preponderance of the evidence to support the administrative decision does not negate the deference it afforded.

{¶51} The Village also contends the trial court ignored the fact that the Dairy did not dispute the violations. The Village reasons that because the Dairy did not dispute the violations, there was competent and credible evidence to support the Disconnection Order. In a R.C. 2506.04 appeal, the court of common pleas is required "to assess the credibility of the witnesses as well as the probative character of the evidence, and to determine the weight to be given that evidence." *Fulmer v. W. Licking Joint Fire Dist.*, 2014-Ohio-82, ¶ 16 (5th Dist.). The Supreme Court of Ohio has defined "reliable," "probative," and "substantial" as follows: "[r]eliable evidence is dependable; that is, it can be confidently trusted. In order to be reliable, there must be a reasonable probability that

the evidence is true. (2) Probative evidence is evidence that tends to prove the issue in question; it must be relevant in determining the issue. (3) Substantial evidence is evidence with some weight; it must have importance and value." *Bartchy v. State Bd. of Edn.*, 2008-Ohio-4826, ¶ 39. The trial court reviewed the whole record, as is reflected in its judgment entry. A review of the evidence did not convince the trial court that the Disconnection Order was supported by a preponderance of the reliable, substantial, and probative evidence.

{¶52} We have reviewed the record, not to weigh the evidence, but to ensure there was appropriate evidence for the court of common pleas' decision. Despite the Village's contention that the trial court substituted its judgment for that of the Village and/or the Service Director, there is evidence in the record to support the trial court's decision. There was no sworn testimony at the hearing. The Report prepared by Williams contained factual assertions and descriptions of violations that were never mentioned or described either at the hearing or in the NOV. Specifically, as to the Village's assertion that the Dairy never disputed the violations, the Dairy's March 24, 2023, response denied the violations and stated its compliance manager needed time to review the testing results allegedly obtained by the Village. In an April 18th letter, the Dairy stated it "continues to have concerns regarding potential sample analysis inaccuracies as previously reported * * *." Thus, it is clear the Dairy did dispute the violations. The trial court did not abuse its discretion as a matter of law when it found there was not a preponderance of reliable, probative, and substantial evidence to support the Village's decision.

*Substantial and Impactful Violations*

{¶53} Lastly, the Village contends that, even if it failed to give the Dairy due process, the show cause order was proper because of the "substantial and impactful" violations of the ordinance. The Village cites the Dairy's previous violations and also cites alleged violations the Dairy had for several months after the administrative hearing was held and the appeal in this case was filed. We find this argument to be not well-taken. The 2020 violations were resolved through a settlement agreement that was signed by all parties. Further, the Village did not invoke any of the procedures in Ordinance 921.16(d), which provides that the "Service Director may, for good cause, immediately suspend the treatment services of an industrial user when it appears that an actual or threatened discharge presents an imminent danger to the public health and welfare * * *." Finally, any alleged violations after the April 2023 Disconnection Order are not at issue in this appeal. Thus, the trial court did not abuse its discretion in finding the Dairy was entitled to due process.

{¶54} The Village's first and second assignments of error are overruled.

III.

{¶55} In its third assignment of error, the Village contends the trial court abused its discretion in finding the Dairy had constitutional due process rights beyond the procedural rights afforded by Village Ordinance 921.16. The Village argues the Dairy has no due process rights beyond the procedural requirements contained in Ordinance 921.16 because the EPA discharge permit does not "convey any property rights" and discharge to a local sewer is a privilege, not a right.

**{¶56}** Because the Village failed to file a brief in regard to any R.C. 2506 issues, the Village did not raise either of these arguments in its administrative appeal to the trial court. "A failure to raise an issue during an administrative appeal before the common pleas court operates as a waiver of the party's right to assert the issue for the first time to an appellate court." *State ex rel. Zollner v. Indus. Comm.*, 66 Ohio St.3d 276 (1993); *Gross Builders v. City of Tallmadge*, 2005-Ohio-4268 (9th Dist.). Further, we found in the first two assignments of error that the Village did not comply with its own ordinance, and thus the Dairy did not receive due process.

**{¶57}** As to whether the Dairy has any general due process rights beyond Ordinance 921.16, both the Supreme Court of the United States and the Supreme Court of Ohio have held that the Fourteenth Amendment to the U.S. Constitution and Section 16, Article I of the Ohio Constitution, require that administrative proceedings comport with due process. *Mathews v. Eldridge*, 424 U.S. 319 (1976); *Doyle v. Ohio Bur. of Motor Vehicles*, 51 Ohio St.3d 46 (1990). "At its core, due process insists on fundamental fairness, and the requirement to conduct a hearing implies that a fair hearing must occur." *State ex rel. Ormet Corp. v. Indus. Comm.*, 54 Ohio St.3d 102 (1990).

**{¶58}** This Court has stated a party is entitled to procedural due process in an administrative appeal, which includes reasonable notice and a meaningful opportunity to be heard, in order to ensure the fairness of the hearing. *Quinton v. Delaware Cty. Bd. of Revision*, 2024-Ohio-6034, ¶ 12 (5th Dist.); *Sharp on Behalf of Sharp v. Ohio Dept. of Job & Family* Services, 2019-Ohio-5397, ¶ 51 (5th Dist.), citing *Ohio Assn. of Public School Emp., AFSCME, AFL-CIO v. Lakewood City School Bd. of Edn.*, 68 Ohio St.3d 175

(1994). The trial court utilized the language previously used by this Court in its due process discussion and determination.

{¶59} In support of the second portion of its argument, the Village cites to one Pennsylvania federal civil rights case, *Perano v. Arbaugh*, 2011 WL 1103885 (E.D. Pa. 2011). The judge in that case stated, "permits generally are not recognized as property interests under Pennsylvania law, and instead are classified as mere privileges." We do not find this authority persuasive, as it is factually distinguishable from the instant case and deals specifically with Pennsylvania law, not Ohio law. The most notable factual distinction is that, in this case, the Disconnection Order assesses civil penalties and fines in the amount of approximately $190,000, which is more than simply a decision on whether the Dairy can or cannot discharge to the sewer. Additionally, there is a protectable property interest under the Due Process Clause due to the plain language contained in the Minerva Ordinances ("due notification" and "just cause" is required for revocation or suspension of a POTW permit).

{¶60} Based on the foregoing, appellant's third assignment of error is overruled.

IV.

{¶61} In its fourth assignment of error, the Village argues the trial court committed error in vacating the Village's decision rather than holding a de novo hearing or remanding the decision for the Village to hold a hearing after curing the due process issues.

{¶62} We review the determination by the trial court to affirm, reverse, vacate, or modify the order, adjudication, or decision, or remand the cause under an abuse of discretion standard. *Glass City Academy, Inc. v. City of Toledo*, 2008-Ohio-6391 (6th Dist.). Further, we review the trial court's decision to allow or deny the introduction of

additional evidence pursuant to R.C. 2506 under an abuse of discretion standard. *Ney v. Schley*, 2021-Ohio-1848 (5th Dist.). An abuse of discretion connotes more than an error of law or judgment; rather, it implies the court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217 (1983).

{¶63} We initially note that, because the Village failed to file a brief regarding the R.C. 2506 issues in the case, the Village never made the argument to the trial court that if the trial court found the Disconnection Order violated the Dairy's right to due process, the trial court should either hold a de novo hearing or remand the case back to the Village to hold the show cause hearing after complying with due process. "A failure to raise an issue during an administrative appeal before the common pleas court operates as a waiver of the party's right to assert the issue for the first time to an appellate court." *State ex rel. Zollner v. Indus. Comm.*, 66 Ohio St.3d 276 (1993); *Gross Builders v. City of Tallmadge*, 2005-Ohio-4268 (9th Dist.).

{¶64} However, even if we were to consider the Village's arguments, we find no error in the trial court's action of vacating the order rather than holding a de novo hearing or remanding it to the Village.

### De Novo Hearing by the Trial Court

{¶65} It appears in their fourth assignment of error, the Village attempts to argue both: (1) the trial court should not have granted the Dairy's motion for de novo hearing and (2) the trial court committed error in not holding a de novo hearing if it found the Dairy's due process rights were violated.

{¶66} As to the trial court's granting of the Dairy's motion for a de novo hearing, the Village asserts, "under these circumstances, there was no denial of constitutional due

process and thus no grounds to find that a de novo hearing was justified." Further, "at most, supplementation of the record" would be justified, rather than a de novo hearing. The Village also attempted to incorporate its arguments in opposition to the motion for a de novo hearing in their appellate brief ("for the sake of brevity, the Village incorporates herein its arguments in opposition to the motion for a de novo hearing, rather than repeating them"). However, this Court has previously held, "it is well-established that the Rules of Appellate Procedure do not permit parties to incorporate by reference arguments from other sources." *Tripodi Family Trust v. Muskingum Watershed Conservancy Dist.*, 2008-Ohio-6902 (5th Dist.).

{¶67} To the extent the Village argues the trial court committed error in granting the Dairy's motion for a de novo hearing, we find no abuse of discretion in the trial court's determination. First, this Court has held that when an appellant in an administrative appeal raises the constitutionality of the resolution or ordinance as applied to him, he is entitled to a de novo review because the constitutional issue is within the primary jurisdiction of the trial court. *Sanicky v. Ruggles Twp. Bd. of Zoning Appeals*, 2003-Ohio-3133 (5th Dist.). In this case, the Dairy asserted several as-applied constitutional challenges to the Disconnection Order and Minerva Ordinance Chapter 921. Thus, the trial court's determination comports with this Court's prior holdings.

{¶68} Further, as to the April 30th hearing, the trial court did not actually take any new evidence at this hearing. Rather, the parties and the trial court agreed the question of whether the Disconnection Order was unconstitutional, illegal, arbitrary, capricious, unreasonable, or unsupported by a preponderance of the substantial, reliable, and probative evidence (including any due process issues) should be decided on briefs the

parties would file, with the administrative record already filed with the trial court. Thus, no additional evidence was considered by the trial court with regards to the R.C. 2506 issues.

{¶69} As to the Village's second argument the trial court committed error in failing to hold a de novo hearing to correct any due process deficiencies in the Disconnection Order instead of vacating the Disconnection Order, we similarly find no abuse of discretion in the trial court's determination.

{¶70} First, throughout the proceedings, the Village continually maintained the Dairy was not entitled to a de novo hearing before the trial court. Because the Village failed to argue their position in a brief and maintained throughout the proceedings they did not want a de novo hearing in front of the trial court, any error in this regard is invited error. The invited error doctrine is a well-settled principle of law under which a "party will not be permitted to take advantage of an error which he himself invited or induced." *Hal Artz Lincoln-Mercury, Inc. v. Ford Motor Co.*, 28 Ohio St.3d 20 (1986). Continually throughout the administrative appeal, the Village objected to the trial court holding a de novo hearing. Further, the Village did not ask the trial court to conduct a de novo hearing if it found the Dairy was denied due process. The Village cannot now take advantage of any error in that regard. *Wojcik v. Pratt*, 2011-Ohio-5012 (9th Dist.).

{¶71} Second, though the Village asserts the trial court only found in the Dairy's favor because of due process violations, the trial court also found the Disconnection Order was not supported by the preponderance of reliable, substantial, and probative evidence. Thus, simply holding a de novo hearing to "cure any due process that was lacking" as the Village suggests, does not solve the problem.

*Remand to Village Council*

{¶72} The Village also contends the trial court abused its discretion in failing to remand the case to Village Council to cure any procedural deficiencies and issue a new show cause order.

{¶73} As noted above, the trial court did not decide the administrative appeal solely on the lack of due process. Rather, the trial court also found the decision was not supported by a preponderance of the probative, reliable, and substantial evidence. Thus, a simply remand to cure any due process issues does not cure the lack of evidence submitted at the hearing to support the Disconnection Order. *Natoli v. Ohio State Dental Bd.*, 2008-Ohio-4068 (10th Dist.) (if state failed to prove violations by reliable, probative, and substantial evidence, no remand would be necessary and should affirm trial court's judgment vacating board's order with regard to violations). The trial court opined a remand for a new evidentiary hearing would impermissibly grant the Village a "second bite at the apple."

{¶74} Further, while R.C. 2506.04 authorizes a court of common pleas to remand the matter back to the administrative body, such a remand is not required by R.C. 2506.04, and "it does not necessarily follow that the trial court abuses its discretion by not remanding the matter to the administrative body." *Speedway L.L.C. v. Berea Planning Comm.*, 2014-Ohio-4388 (8th Dist.). Rather, the plain language of the statute gives the trial court the discretion to reverse, vacate, or modify the decision on its own, or it can send it back to the agency with further instructions. *Woodstock Solar Project, LLC v. Rush Twp. Bd. of Zoning Appeals*, 2023-Ohio-2215 (2nd Dist.); *Glass City Academy, Inc. v. City of Toledo*, 2008-Ohio-6391 (6th Dist.).

{¶75} We find no abuse of discretion in the trial court's determination in this case, particularly because the Village failed to request a remand or argue to the trial court a remand was appropriate and because, throughout the proceedings, the Village maintained a remand to the administrative body was not necessary because all of the information required to support the administrative determination was in the record.

{¶76} The Village's fourth assignment of error is overruled.

{¶77} Based on the foregoing, the Village's assignments of error are overruled.

{¶78} The May 30, 2024, judgment entry of the Stark County Court of Common Pleas is affirmed.

By Popham, J.,

Hoffman, P.J., and

Montgomery, J., concur